### CULLEN v. BOURKE.

#### (Supreme Court, Special Term, Kings County. May, 1905.)

INJUNCTION—TRESPASS BY POLICE.

> Where a captain of police for several days kept policemen stationed in plaintiff's store, and caused a patrol wagon to stand in front, and to be driven up and down, with a loud ringing of the bell, and policemen on the outside called out to those offering to enter that it was a suspected poolroom and they might be arrested if they entered, and no arrests were made or warrant issued, a permanent injunction would issue to restrain such trespass.

Suit by James R. Cullen to restrain Edward J. Bourke, individually and as acting captain, from a continual trespass on plaintiff's premises. Motion for permanent injunction. Motion granted.

Louis H. Reynolds, for the motion.

James D. Bell, opposed.

GAYNOR, J. This is a suit to restrain the defendant, a captain of police, from continuing to do acts of trespass and violence upon the plaintiff and his place of business. The undisputed facts of the complaint and affidavits disclose a case of official lawlessness and outrage which has become common in the city of New York, and from which no good but only evil can possibly come.

The plaintiff keeps a cigar store at No. 34 West Third street, Manhattan. He purchased the business February 1, 1905. On February 7th three policemen entered his store and smashed in the doors leading to the smoking room in the rear. They found the plaintiff and several other men there at luncheon. The plaintiff ordered them out, but they refused to go. Very soon the defendant came in with several policemen. The plaintiff and his lawyer, who had been sent for, ordered him out, but he refused to go. He said he would come there and break in whenever he saw fit. When he went away he left two policemen with instructions to stay there until further orders. They remained all day. Next day the defendant returned with several policemen. He shoved the plaintiff

out of the way and went into the rear room. He refused to leave on demand. When he went away he left one policeman in the place for the day. The next day the defendant came again into the plaintiff's store and stationed three policemen there for several hours. He also had a police patrol wagon come in front with several policemen. By his order the gong of this wagon was loudly rung for 10 minutes as the wagon stood there. He then had the wagon drive up and down in front of the plaintiff's store for half an hour, the gong being rung all the while. A great crowd was thereby collected. When the defendant withdrew he left one policeman in the store for the day. Next day the defendant came to the plaintiff's store again with several policemen, and stationed two there for the day. During all of these days the defendant also had one and sometimes two policemen stationed on the sidewalk in front of the plaintiff's store, who called out to every one offering to enter: "This is a suspected poolroom. You are liable to be arrested if you go in there." Of course there was no poolroom, for pools have not been sold in or about the city of New York for many years. The claim is that the defendant suspected that the plaintiff allowed secret betting in his place on horse races.

All of the foregoing was done without a warrant, and no arrest was made. From first to last the actions of this defendant were simply an exercise of lawless brute force. He simply trampled the law, the decisions of the courts and the rights of this plaintiff under his official feet. Not only had he no warrant, but he is not able to make a pretence of having any evidence whatever of any betting in the plaintiff's place. While under examination on oath in a proceeding before the deputy police commissioner some time afterwards he fully admitted this. Two questions and answers will suffice, viz.:

"Did you at any time find any violation of the law at 34 West Third street? Answer—No, sir. Q. And despite the fact that you have never found any violation of the law you have placed men on the inside and outside of that place and warned people not to go in there and directed the men to warn people? Answer—Yes."

He seems to be possessed of the delusion that he is under no restraint whatever by the laws, but simply turned loose on the community to knock people about and do as he pleases. In a free government like ours, which is a government of laws and not of men, and where every official, however high, is under the direction and restraint of laws, such a delusion might well be deemed insane if no bad motive were back of it.

It is incredible that a police captain harboring the notion which this one does in regard to his powers could have got on the police force at all, and much more incredible that he should be permitted to stay there. He is humiliating and debasing the men under him by requiring them to do such lawless acts. It is no wonder if men thus debased by ignorant or lawless superiors become demoralized.

It is said that the conduct of this defendant arises from his virtuous zeal against the injurious vice of betting on horse races in

private. He seems to be wholly unaware, and not informed by his official superiors, that the vice of arbitrary power which he indulges in is a far worse vice, and far more dangerous to society and to our system of government, than the vice of betting. It brings in its train a horde of vices, and especially the despicable vices of oppression, extortion and blackmail. If this captain of police is to be permitted to go on doing at will what he has done to this plaintiff, he can extort money throughout his precinct, and get rich thereby, just as police officials have done in the past in the city of New York, as we all know, for the proof of it has been matter of public record for several years. The safety and the morals of the community require that all public officials should respect the law, and keep within the law prescribing and limiting their powers. The only way to preserve law and order in the community, and administer the criminal law, is the way prescribed by the law.

It may be that this plaintiff is addicted to the vice of betting on horse races, a vice publicly practiced on five or six race tracks within the limits of the city of New York, and that he allows such betting to be privately practiced on his premises. If so, the way of the law toward him is perfectly plain. It is also effective. The way and the command of the law is that evidence of the fact be first obtained, and that thereupon he be arrested, convicted and imprisoned. Such a course would beget a wholesome respect and fear of the law, and even a few convictions would be effective to lessen the number of secret betting places; whereas lawless spectacular raids not only degrade the law but do no good. To obtain such evidence the police force has a detective or secret service force.

If it be asked, "What is to be done if no evidence can be obtained?" the answer of the law is emphatic, "Do nothing." The law does not permit even a murderer to be molested without evidence. The meaning of free government is that no one may be molested or arrested except in the way prescribed by law. Upon this alone does free government rest. This is well understood everywhere outside of the city of New York except in archaic despotisms such as Russia. Where officials do as they like, free government does not exist. Ours is a government of laws, not of men. Russia is a government of men, not of laws.

I am informed that since this case was submitted to me the plaintiff has been duly arrested on a warrant on a charge of permitting secret betting in his place, but that in court there was no evidence to sustain the charge. This defendant is free to get evidence and get another warrant; but unless he can do so, he must not further molest this plaintiff. He cannot be permitted to overstep and trample on the law regulating his conduct in his zeal to make other people observe the law regulating theirs.

It cannot be necessary to cite the decisions of our courts on the law of the case. They have been very frequent of late by several judges and have been reviewed and upheld on appeal. Hale v. Burns, 44 Misc. Rep. 1, 89 N. Y. Supp. 711; Id., 101 App. Div. 101, 91 N. Y. Supp. 929. It really begins to appear that there

are police officials who intend to defy both the plain letter of the law and the decisions of the courts. They manifest open displeasure at each decision, and straightway violate it. That condition is certain to come to an end either by the action of the courts or the vote of the people of the city, for among a free people it is intolerable.

I hope I may properly say that it seems singular that the corporation counsel should defend the police in unlawful acts like those here disclosed. His official duty is on the contrary to advise the police of the extent of their powers, and to refuse to uphold them in any violation of the law.

Motion granted.