accident. This was not a change of causes of action, and as stated in the case of *Louisville & N. Rd. Co.* v. *Greene,* 113 Ohio St., 546, 149 N. E., 876, was simply a pleading of a fact, and changing that fact from an incorrect to a correct date. This does not contravene the law as to amending pleadings, and no error intervened on that account.

We are, therefore, of the opinion that there was a total constructive loss in this case, which was covered by the policies in question and that under the law as to constructive total losses, the amount of $300 obtained from the sale of the barge should be prorated on the judgments obtained in the cases.

The judgments will be so modified, and, as modified, will be affirmed.

*Judgments modified and affirmed as modified.*

MATTHEWS and ROSS, JJ., concur.

MONFRINO, APPELLANT, *v.* GUTELIUS, MAYOR, ET AL., APPELLEES.

*Messrs. Guarnieri & Secrest,* for appellant.
*Mr. George Buchwalter,* for appellees.

NICHOLS, P. J. This cause is in this court on appeal by plaintiff on questions of law and fact from the judgment of the Court of Common Pleas of Trumbull county.

In his petition plaintiff prays that the defendants be enjoined from stationing and maintaining police officers in plaintiff's place of business in the city of Warren. The case is submitted to this court upon an agreed statement of facts, wherein it is stipulated that the plaintiff is a married man living in the city of Warren; that he is the owner of a restaurant located at No. 602 South Park avenue in the city of Warren; that this restaurant is generally known as the "Steak House"; that the defendant, Dan Gutelius, is the mayor of the city of Warren; that Ralph S. Taylor is the service and safety director of the city of Warren and B. J. Gillen is the chief of police of the city of Warren; that from about the middle of October 1938, to about the 28th day of November 1938, police officers were kept in the restaurant known as the "Steak House" intermittently; and that beginning about the 28th day of November 1938, to the time of the granting of a temporary restraining order by the Common Pleas Court on December 8, 1938, officers were kept in the restaurant continuously from the time of the opening of the restaurant in the morning at approximately 7 a. m., to 1 a. m. the following morning.

It is further stipulated that during the year 1938 the following arrests and convictions for exhibiting

gambling paraphernalia at the address known as the "Steak House," No. 602 South Park avenue, Warren, Ohio, were secured:

February 6, John Marino; exhibiting gambling paraphernalia, plead guilty, fined $100 and costs;

April 2, Romel Fortuna; possessing lottery slips, plead guilty, fined $25 and costs;

June 8, Anthony Milola; possessing and exhibiting gambling paraphernalia, plead guilty, fined $25 and costs;

June 9, Romeo Fortune; possessing gambling paraphernalia, plead guilty, fined $25 and costs;

June 15, Chestra Ventura; possessing and exhibiting gambling paraphernalia, plead guilty, fined $25 and costs;

July 7, Mike Savino; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

July 15, Patsy Bassoni; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

August 12, Joe Zambori; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

September 9, Joe Zambori; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

September 10, Joe Zambori; possessing and exhibiting gambling paraphernalia, plead guilty, fined $5.00 and costs.

The agreed statement of facts does not definitely set forth whether the police officers stationed in plaintiff's place of business were uniformed or ununiformed officers, but we understand from the oral arguments in this court that these officers were in uniform. The sole question for determination in this case is whether plaintiff is entitled to injunctive relief to prevent these uniformed police officers from remaining in his place

of business continuously from the time the place is opened for business until it is closed. Plaintiff claims that defendants have violated his property rights as well as his civil rights, and counsel for plaintiff cite Sections 1 and 14 of the Bill of Rights of the Constitution of Ohio, which provide as follows:

"Section 1. All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

"Section 14. The right of the people to be secure in their persons, houses, papers and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the person and things to be seized."

It is argued on behalf of plaintiff that the stipulated facts are not inconsistent with the presumption that plaintiff has conducted his restaurant in an orderly, lawful and legal manner, and that no more than an unjustified suspicion exists that his place of business is being conducted by him for other than a lawful purpose; that this suspicion is insufficient to warrant the invasion of his private property; and that such invasion constitutes a continuing trespass upon his property by the defendants, whereby there has been caused embarrassment, injury and harm to plaintiff in the conduct of his business, for which he has no adequate remedy in law.

There is no evidence in the record indicating that plaintiff's business has in fact suffered or been injured by reason of the stationing of the police officers therein, but it is argued that irreparable injury necessarily results from the continued trespass of the defendants therein.

It is pointed out that no violations of the law took

place in plaintiff's premises during the time the police officers were stationed therein, and it is argued from this fact that the invasion of plaintiff's premises by the police officers is unreasonable, unjust and unwarranted, and in violation of the rights guaranteed to him by the Constitution.

On the other hand, it is argued on behalf of defendants that the numerous instances in which arrests have been made and convictions had of various persons for violating the gambling laws of the state demonstrate that plaintiff is not conducting a legitimate business upon his premises but is, in fact, using the name "Steak House" and calling his place of business a restaurant, as a "blind" for carrying on gambling operations therein or permitting the same to be carried on therein in violation of law; that the means used by defendants to prevent such unlawful use of the premises and the violation of the gambling laws therein is a reasonable exercise of the police power of these officers; and that plaintiff, under the circumstances, has forfeited his right to enjoin these officers in the duty imposed upon them by law to prevent the commission of crime.

Section 4250, General Code, provides that the mayor shall be the chief conservator of peace within the corporation, and that he shall have power to appoint the director of public safety.

Section 4368, General Code, provides that the director of public safety shall be the executive head of the police department.

Section 4378, General Code, provides that the police force shall preserve the peace, protect persons and property and obey and enforce all ordinances of council, and all criminal laws of the state and the United States.

It is apparent that the civil and property rights of the individual as guaranteed by the Bill of Rights may often conflict with the specific duties enjoined upon the

officers of a city in the performance of their respective duties as conservators of the peace and for the prevention of crime. It is not always easy to reconcile these conflicting rights and duties. As stated by the learned judge of the Common Pleas Court, in his opinion in this case (*Monfrino* v. *Gutelius,* 28 Ohio Law Abs., 225):

"A business man is entitled to protection of his legitimate business, from continued interference by police officers, when that interference is not well founded."

It is equally clear, however, that a court of equity will not extend its help for the purpose of aiding one to use his property to commit a crime and will refuse an injunction when the evident purpose thereof is to prevent police interference in the conduct of an unlawful business.

In the record we have before us, there is no evidence as to the extent or character of the restaurant business carried on by plaintiff at 602 South Park avenue, in the city of Warren. There is evidence that this so-called restaurant is a place in which numerous arrests were made within a period of a few months prior to the stationing of police officers therein, the persons arrested being convicted of, or having plead guilty to, exhibiting gambling paraphernalia therein.

In conducting a restaurant upon these premises, plaintiff has in a measure destroyed the private character thereof by inviting the public therein, and he thereby undertakes that the premises will be used in a peaceful and lawful manner, and that under the police authority necessary for the welfare of the public his premises are open for inspection and surveillance by the officers whose duty it is to maintain the peace and prevent the violation of the criminal laws of the city, state and nation.

It is inconceivable that plaintiff, in the proper oversight of his restaurant business to which he has invited

the public, would be without knowledge of the fact that his place of business was being resorted to as a place for exhibiting gambling devices. If plaintiff is conducting a legitimate restaurant business, he tacitly assures the public that reasonable precaution will be taken by him to see that his premises are not used for any unlawful purpose, but in this case it appears in the record that although the premises were used upon numerous occasions by various persons for exhibiting gambling devices, plaintiff himself apparently attempted to shield such persons, for it appears in the stipulation that he plead guilty to interfering with the officers in the performance of their duty.

It is clear to this court from the record that the defendants had much more than a mere suspicion that plaintiff's premises had been or might be used for unlawful purposes, and that in the interest of peace and order and in the performance of their duties to prevent crime the defendants were warranted in stationing the police officers in plaintiff's place of business so long as they were not guilty of any unreasonable conduct tending to destroy plaintiff's business or deprive him of his property rights therein, or other rights guaranteed by the Constitution and laws of this state.

Sight must not be lost of the requirements and needs of good government. In the interests of peace and order, the individual is often compelled to suffer inconvenience and sometimes humiliation. While it is still true that a man's house is his castle and free from invasion, it is equally true that this right depends upon obedience to law and that it can not be used as a shield to commit crime.

Our attention has been directed by counsel for plaintiff to the cases of *Boring* v. *Hunt,* 12 N. P. (N. S.), 472, 22 O. D. (N. P.), 543, and *Cullen* v. *Bourke,* 93 N. Y. Supp., 1085, as authority for his right to an injunction in this case.

In *Boring* v. *Hunt, supra,* the petition of plaintiff alleged that the defendants in their official capacity conspired together to injure her in her business, and to that end stationed a uniformed police officer in her place of business, with instructions to interrogate persons visiting the same and otherwise interfering with her conduct of the business. The evidence in that case disclosed a lack of any proof that violations of law had taken place in plaintiff's place of business or that even a suspicion existed that plaintiff was violating any criminal laws or permitting violation thereof in her place of business; that the police officer was stationed therein for the purpose of preventing plaintiff from charging usurious rent upon money loaned, which was not a criminal offense, the only provision of the Code in reference thereto being that the usurious payments may be credited on account of the principal, or may be recovered in a civil suit. There the police officers were not engaged in the performance of any duty as conservators of the peace or to prevent crime, and the injunction was properly granted.

In *Cullen* v. *Bourke, supra,* a captain of police kept policemen stationed in plaintiff's store for several days and caused a patrol wagon to stand in front and to be driven up and down, with a loud ringing of the bell, and policemen on the outside called out to those offering to enter that it was a suspected pool room and they might be arrested if they entered, and no arrests were made or warrants issued. It was held that a permanent injunction would issue to restrain such trespass. It is apparent from the facts in that case that the police officers went far outside their duties to maintain peace and prevent the commission of crime and were guilty of overt acts, tending to injure, if not destroy, plaintiff's business.

On the other hand, it was held in *Weiss* v. *Herlihy,* 23 App. Div., 608, 49 N. Y. Supp., 81, that:

"In an action by a lessee of premises in New York

city to restrain the captain of the police precinct from keeping police officers stationed continuously therein, to the injury and threatened destruction of plaintiff's business, it appeared upon plaintiff's motion for injunction pending the action that, while the premises were nominally employed for a legitimate business as a restaurant and for the sale of liquor, they were in reality carried on as a resort for men of notorious evil reputation, and as a common gambling establishment, and that it had proved impossible for the police to prevent their use for the latter purpose by mere periodical visits. *Held,* that under the principle that he who comes into equity must come with clean hands, the plaintiff was not entitled to relief.''

In *McGorie* v. *McAdoo,* 113 App. Div., 271, 99 N. Y. Supp., 47, the Supreme Court, Appellate Division, reversed the Supreme Court, Special Term, 49 N. Y. Misc., 601, 99 N. Y. Supp., 1107, and held that where the only excuse for the presence of the officers is a suspicion on the part of the police department that something unlawful has been or will be done upon the premises, a court of equity has jurisdiction to enjoin further police interference where the undisputed proof showed that a legitimate business was being conducted and the officers were interfering with customers desiring to enter the building to transact business. It will be noted that in such case the undisputed proof showed that plaintiff was conducting a legitimate business and that there was no more than a suspicion that the premises were being used for an unlawful purpose; and in addition the officers were interfering with persons coming upon the premises to transact business. The facts in that case are quite distinguishable from those in the case at bar where the police officers had more than a suspicion that the premises were being used for an unlawful purpose; they had actual proof in the way of convictions and pleas of guilty, that violations of law had frequently taken place in the restaurant and that

the proprietor was interfering with the police in the performance of their duties.

In the case at bar the police officers stationed in plaintiff's place of business were doing no overt act to interfere with persons coming upon the premises to transact business, and were not in any way threatening, intimidating, persuading, or suggesting that persons should not come upon the premises to do business. In situations of like character, it is held as a general rule that equity will not interfere with the police.

In *Delaney* v. *Flood,* 183 N. Y., 323, 76 N. E., 209, it was held that the plaintiff was not entitled to an injunction to restrain the police authorities, who had been stationed outside a place having a liquor tax certificate on the suspicion that the place was a disorderly house and who notified customers therein, or about to enter, that it was likely to be raided at any moment and those found on the premises liable to be arrested, it being indicated that plaintiff's remedy was an action at law for damages.

In *Kearney* v. *Laird,* 164 Mo. App., 406, 144 S. W., 904, the St. Louis Court of Appeals held that where both the right and duty of an officer or branch of the government to act involve the exercise of discretion, the officer's conduct with respect to such duty or discretion can not be controlled by injunction.

In *Biagini* v. *Shoemaker, Commr. of Pub. Safety,* 122 Wash., 204, 210 P., 193, the Supreme Court of Washington held:

"An injunction to enjoin the placing of ununiformed police officers in the business establishment of petitioners was properly denied, where such business was that of selling soft drinks and tobacco, and the place of business, the character of the establishment, the equipment, a number of employees, the rent paid, and the stock of merchandise on hand strongly indicated that petitioners' activities were not confined to the legitimate business of selling soft drinks in accordance with

their license, but that they were engaged in the illicit sale or distribution of intoxicating liquor.''

In the opinion in that case, the court used language which is pertinent to the case at bar, as follows:

''Police officers, of course, cannot be allowed to do unreasonable and unwarranted acts which interfere with legitimate business, yet they are not to be so hampered in their activities in preventing crime as to make the perpetration of crime profitable, easy and uninterrupted.''

Many authorities are cited by the court in support of its decision, reference to which may be had.

A recent case by the Supreme Court, Special Term, New York city, is that of *Oriental Merchants Assn. of Harlem, Inc.*, v. *Valentine*, 167 N. Y. Misc., 373, 3 N. Y. Supp. (2d), 229, wherein the court held, as do we hold, that the right of freedom from invasion in one's house depends on obedience to law, and can not be used as a shield to crime; and further, that police officers may be stationed in private premises to prevent crime and that equity will not interfere with the enforcement of the criminal law.

It is infinitely better to avoid the commission of crime than to await its commission and then punish.

It is our conclusion that plaintiff has not shown any right to the equitable relief prayed for in his petition, and his petition is, therefore, dismissed.

*Petition dismissed.*

CARTER and PHILLIPS, JJ., concur.