GARONO, D.B.A. GARONO VENDING COMPANY, APPELLEE, *v.* THE STATE OF OHIO ET AL., APPELLANTS.

[Cite as Garono v. State (1988), 37 Ohio St. 3d 171.]

(No. 87-732—Submitted February 9, 1988—Decided June 15, 1988.)

172

*John A. Connor II,* for appellee.
    *Gary L. Van Brocklin,* prosecuting attorney, and *Mary Jane Stephens,* for appellant state of Ohio.
    *Edwin Romero,* director of law,

and *William J. Higgins,* for appellant city of Youngstown.

HANDWORK, J. Appellants challenge the court of appeals' decision below only insofar as it affirmed the granting of the first part of the injunction. Appellants assert that this portion of the injunction should have also been denied because: (1) it interferes with the ability of the executive branch to enforce the law, (2) it violates appellants' rights of local self-government, and (3) draw poker machines are gambling devices *per se.*

We will address only appellants' first and third propositions of law inasmuch as the issue of whether the injunction interferes with appellants' right of local self-government was not raised below. It is well-settled in the law that "* * * questions not raised or passed upon by the lower courts will not be ruled upon by the Supreme Court." *Mills-Jennings, Inc.* v. *Dept. of Liquor Control* (1982), 70 Ohio St. 2d 95, 99, 24 O.O. 3d 181, 183, 435 N.E. 2d 407, 409.

For the reasons which follow, we affirm the granting of the injunction only insofar as it relates to the further impoundment by the Beaver Township police of the four poker machines owned by appellee, but reverse the granting of the injunction as it relates to the permanent prohibition against enforcement of the law by the defendants herein.

An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot. *Sternberg* v. *Bd. of Trustees* (1974), 37 Ohio St. 2d 115, 118, 66 O.O. 2d 257, 258-259, 308 N.E. 2d 457, 460; *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 153, 40 O.O. 2d 141, 149, 228 N.E. 2d 631, 642; *Perkins* v. *Quaker City* (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 153, 133 N.E. 2d 595, 598; and *Salem Iron Co.* v. *Hyland* (1906), 74 Ohio St. 160, 167, 77 N.E. 751, 752. The grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion. *Perkins* v. *Quaker City, supra,* at 125, 59 O.O. at 153, 133 N.E. 2d at 598.

A court should exercise great caution regarding the granting of an injunction which would interfere with another branch of government and especially with the ability of the executive branch to enforce the law. *Country Club Hills Homeowners Assn.* v. *Jefferson Metro. Housing Auth.* (1981), 5 Ohio App. 3d 77, 5 OBR 189, 449 N.E. 2d 460; *Lyons* v. *Cincinnati* (1936), 55 Ohio App. 458, 9 O.O. 49, 9 N.E. 2d 988; and *Snyder* v. *Alliance* (1931), 41 Ohio App. 48, 179 N.E. 426. An injunction would be proper where the police are unwarranted in going beyond their authority or duty, but an injunction cannot be used to make crime " 'profitable, easy, and uninterrupted.' " (Citation omitted.) *Monfrino* v. *Gutelius* (1939), 66 Ohio App. 293, 303, 20 O.O. 99, 103, 33 N.E. 2d 1003, 1007. See, also, *Snyder* v. *Alliance, supra,* at 51, 179 N.E. at 427. Unless the police seek to enforce an unconstitutional or void law, we will not inhibit their efforts to enforce the law. *Troy Amusement Co.* v. *Attenweiler* (1940), 137 Ohio St. 460, 19 O.O. 153, 30 N.E. 2d 799; *VFW* v. *Sweeney* (C.P. 1952), 64 Ohio Law Abs. 277, 111 N.E. 2d 699.

From the facts set forth in the stipulation of facts in the case *sub judice* and the allegations in appellee's petition, this case appears to set forth circumstances similar to those pre-

sented in *Troy Amusement Co.* v. *Attenweiler, supra.* In *Troy,* the plaintiff sought an injunction to prevent the constable and justice of the peace from interfering with the plaintiff's business by searching the premises, arresting the manager, or seizing equipment used in connection with the operation of "bank night" in the company's theater. Bank night was a promotional drawing which consisted of the public signing a registration book, being assigned a number, and reporting to the manager within three minutes if their number was drawn to collect the bank account. Plaintiff alleged that Attenweiler was filing numerous affidavits for arrests and search warrants for the sole purpose of harassing plaintiff in order to injure his business, good will and reputation. Plaintiff sought an injunction because Attenweiler did not have sufficient assets to compensate plaintiff for the substantial losses plaintiff would suffer if the court should determine that the affidavits were wrongfully filed. The court held that the plaintiff was not entitled to an injunction because equity cannot interfere where the criminal courts have jurisdiction to determine whether prosecution was lawful. Since the manager had adequate protection at law by means of his criminal defense and through an action for wrongful prosecution, arrests, or imprisonment, an equitable remedy could not be granted. *Id.* at 467, 19 O.O. at 156, 30 N.E. 2d at 802. Even the threat of repeated prosecution was insufficient to justify an equitable remedy. *Id.* at 466, 19 O.O. at 156, 30 N.E. 2d at 801.

Although appellee in the case *sub judice* has not been arrested, his property rights are likewise adequately protected through the criminal process. If appellee has not violated the gambling laws, he may raise this defense to clear himself and to recover his property. To approve the injunction granted by the trial court would prevent the police from ever being able to seize, impound, or confiscate appellee's poker machines in the future if they were used in an unlawful manner. This would, in effect, give appellee a license to violate the law without fear of reprisal. For these reasons, we find that the injunction is improper in that it is too broad and thereby interferes with law enforcement.

However, the facts in this case justify the granting of a much narrower injunction. The stipulated facts indicate that the four poker machines owned and leased by appellee to a third party which were seized by the Beaver Township police have not been returned to appellee or the lessee. Appellants are apparently under the assumption that these poker machines are illegal gambling devices. Based upon these limited facts, we must approve the grant of the injunction in part, for the reasons which follow, to prevent the police from further impounding these machines.

At the outset, we must first settle the apparent confusion which arises out of our decision in *Mills-Jennings, Inc.* v. *Dept. of Liquor Control, supra,* wherein we held in the syllabus that video poker machines apparently identical to the machines at issue in the case *sub judice* are gambling devices *per se.* Appellee asserts that these poker machines are not gambling devices *per se* because poker is a game of skill and not a game of chance. For this reason, appellee argues in effect that the legislature's classification of poker as a game of chance is arbitrary and capricious and therefore a violation of the Equal Protection Clause. For support of this argument, appellee looks to the court of appeals' decision in *State* v. *Gavlek, supra.* However, in *Mills-Jennings, supra,* we specifically

found that poker is a game of chance under R.C. 2915.01(D). *Id.* at 97, 24 O.O. 3d at 182, 435 N.E. 2d at 409. Having so found, we then went on to hold that because poker was being played on the machine at issue, the machine was an "apparatus designed for use in connection with a game of chance" under R.C. 2915.01(F)(3) and thus was a gambling device *per se. Id.* at 97-98, 24 O.O. 3d at 182, 435 N.E. 2d at 409.

The fact that an element of skill may be involved in a game does not override the fact that elements of chance exist and, therefore, the game can be classified as a game of chance. In *Westerhaus Co.* v. *Cincinnati* (1956), 165 Ohio St. 327, 59 O.O. 428, 135 N.E. 2d 318, we specifically held in paragraph twelve of the syllabus that certain pinball machines were gambling devices *per se* "notwithstanding that the operation of such machine[s] to attain such sufficient score is predominantly dependent on the skill of the operator."[1] Therefore, to settle this issue once and for all, we specifically hold that the General Assembly appropriately determined poker to be a game of chance.

Even though it is now settled that these video machines are gambling devices *per se* under R.C. 2915.01(F) (3), mere possession of the device is insufficient to find a violation of the gambling laws. Such a device only becomes contraband if it is or is intended to be used to violate the gambling laws under R.C. Chapter 2915. See R.C. 2901.01(M)(6) and 2915.02 (A)(5). Therefore, in order for possession of a gambling device to be illegal, it must be acquired, possessed, controlled, or operated with the purpose to "[e]stablish, promote, or operate, or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit." R.C. 2915.02(A)(2) and (5).

The only fact presented on this issue is that the machines seized were owned by appellee and leased to a third party. Based upon this sparse set of facts before us, we must find that there is no evidence that the machines were being used for profit. The profit element required by R.C. 2915.02(A) (2) may be inferred from the evidence presented. *State* v. *Young* (1983), 13 Ohio App. 3d 91, 93, 13 OBR 107, 109, 468 N.E. 2d 131, 133-134. However, in the case *sub judice,* the stipulated facts contain no evidence from which even an inference can be made that the machines were being used for profit. Since there is no evidence of a violation of the gambling laws, mere possession of the machines does not violate R.C. 2915.02(A)(5) nor can the machines be classified as contraband under R.C. 2901.01(M)(6).

The facts indicate that the machines were seized along with others in Mahoning County and that some individuals were being prosecuted for violating the gambling laws. We may therefore presume that these four machines were seized as evidence to support a charge of violating R.C. 2915.02(A)(5). However, the facts indicate that no one was ever arrested or charged with such a violation with regard to the machines at issue. R.C. 2933.41 governs the disposition of property, other than contraband, which was lawfully seized but is no longer needed as evidence. That sec-

---

[1] We also noted in *State* v. *Wac* (1981), 68 Ohio St. 2d 84, 22 O.O. 3d 299, 428 N.E. 2d 428, that the Committee Comment to R.C. 2915.01 which defines "games of chance" cites *Westerhaus Co.* v. *Cincinnati* in support of the definition. *State* v. *Wac, supra,* at 89, 22 O.O. 3d at 302, 428 N.E. 2d at 433.

tion requires a law enforcement agency to make a reasonable effort to locate the owner of the property and return the property to that person. If the property is unclaimed or forfeited under R.C. 2933.41(C), the law enforcement agency may petition the court to dispose of the property as outlined in the statute.

Whether or not the four poker machines have been forfeited is resolved by a two-part test under R.C. 2933.41 (C), as interpreted by us in *State* v. *Lilliock* (1982), 70 Ohio St. 2d 23, 24 O.O. 3d 64, 434 N.E. 2d 723. In order for the appellee in this case to be deprived of his rightful possession, the property must have been, or attempted to have been, used by him in the commission of an offense and possession of the property, under the circumstances or due to the nature of the property, would make it unlawful for him to possess it. Neither prong of this test has been met in this case inasmuch as no one has been charged with the commission of an offense and there is also nothing inherently illegal about appellee's possession of the machines.

Under the circumstances, the police have no right to retain these machines. Since the machines can be lawfully possessed and there is no evidence before us that they were used in an unlawful manner, the continued impoundment of the machines by the police infringes upon appellee's due process rights. For this reason, we approve the grant of an injunction to prevent the police from further impounding these machines.

Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part as indicated herein.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

LOCHER and WRIGHT, JJ., concur in part and dissent in part.

PETER M. HANDWORK, J., of the Sixth Appellate District, sitting for DOUGLAS, J.

WRIGHT, J., concurring in part and dissenting in part. While I concur with the holding that video poker machines are gambling devices *per se* under R.C. 2915.01(F)(3), I cannot agree that the four machines involved in this case should be returned to appellee.

The majority opinion asserts that, because there is no evidence of a violation of gambling laws, the poker machines cannot be classified as "contraband" as defined in R.C. 2901.01(M) (6). This statute states in pertinent part:

"(M) 'Contraband' means any property described in the following categories:

"* * *

"(6) Any gambling device, paraphernalia, money as defined in section 1301.01 of the Revised Code, or other means of exchange that has been, is being, or is intended to be used in an attempt or conspiracy to violate, or in the violation of, Chapter 2915. of the Revised Code."

Since we have held that these video games are gambling devices *per se* under R.C. 2915.01(F)(3), the machines themselves must be classified as illegal contraband under R.C. 2901.01 (M)(6). The evidence is undisputed that the four video poker machines seized by Beaver Township police were leased to a third party by appellee. At the very least, it should be apparent that a *prima facie* case was established that these machines were being used in violation of R.C. Chapter 2915. In addition, any future use of these machines in Ohio would violate the statute.

Illegal narcotics are not returned to individuals after a trial despite a finding of not guilty. Likewise, this form of contraband should not be returned to appellee.

For the foregoing reasons, I must concur in part and dissent in part.

LOCHER, J., concurs in the foregoing opinion.