Appellants, Dunkirk Realty and Dunkirk Realty, Ltd., appeal from a judgment of the Wood County Court of Common Pleas denying their application for an injunction and request for damages.
Appellants are the developers of and landowners in Indian Meadows, a subdivision in the city of Perrysburg, Wood County, Ohio. Indian Meadows consists of five separate plats, some of which are still under development. The developers of Indian Meadows formulated deed restrictions for the entire subdivision and, until the subdivision is complete, act as an "Architectural Control Committee" that enforces those restrictions. Upon completion of the entire subdivision, all five plats will consolidate under a homeowners' association that will take over the duties of the committee.
The Declaration of Restrictions for Indian Meadows Plat One, recorded in 1993, reads, in relevant part:
 "Whereas, it is desired to develop Indian Meadows, Plat One as an attractive and pleasant subdivision to the benefit of future owners of lots therein and other residents of the City of Perrysburg and for such purpose to establish restrictions and an Architectural Control Committee.
"* * *
 "1. Developer, its successors and assigns, shall act as the Architectural Control Committee to which all plans and specifications for structures and other improvements including, but not limited to, residential dwellings, swimming pools, tennis courts, fences, walls, bridges, dams driveways, hedges and other enclosures, must be submitted for examination and approval before additions, changes or alterations may be made to any structure or other improvements then situated on a lot. The aforesaid detailed plans and specifications shall show size, location, type, architectectural design, quality, cost use, material construction, color scheme, and grading plan for the lot and the finished grade elevation thereof and must be prepared by a competent architect or draftsman."
The restrictions also prohibit such items as clotheslines, satellite dishes, television antennas and vegetable gardens.
In 1996, appellees, David and Shandra Collette purchased Lot 10 in Indian Meadows Plat One and constructed a home. Appellees installed a ten foot by eight foot white metal shed in the back yard of their residence for the purpose of storing their riding lawn mower and other tools. In August 1997, appellants, through Steven R. Mitchell (one of the developers and a partner) informed appellees that the shed violated the Declaration of Restrictions and ordered them to remove the shed. Appellees refused.
Appellants then instituted the instant action seeking a permanent injunction and damages. At a trial to the bench, evidence concerning a railroad line, the existence of sheds in surrounding subdivisions, the fact that David Collette was told that he could put a shed on his property by his realtor prior to the purchase of the property, and the existence of other violations of the Declaration of Restrictions governing Indian Meadows Plat One was offered. Mitchell testified that the developers' intent in including Paragraph 1, as quoted above, in the Declaration of Restrictions, was to prohibit any "free standing" structures in the subdivision.
In his judgment entry, the trial judge determined that the evidence revealed that there "is no absolute prohibition [in the Declaration of Restrictions] to the construction of a storage shed." He further found that the shed could be moved to a position where it would not be visible to the neighbors or the public and therefore would not affect the "aesthetics of the subdivision." The court also concluded that it would be inequitable to order appellees to remove the shed because it was necessary to them in the maintenance of their property. Finally, the court added: "[T]he statements made to the Collettes at the time they bought the property are partly to be blamed for this alleged violation of the restrictive covenant." The court found in favor of appellees but ordered them to transfer the shed to a location not visible to the public.
Appellants appeal and assert that the following errors occurred in the proceedings below:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF TO ENFORCE A LAND USE RESTRICTION."
 "THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE AND IN BASING ITS DECISION THEREON."
Appellants first argue that the trial court abused its discretion in denying their petition for injunctive relief because the restriction requiring approval of the Architectural Control Committee prior to constructing "a structure or other improvements[1]" is clear and unambiguous and is enforceable. Appellants also contend that the trial court impermissibly found that sheds or barns, similar to or more unattractive than appellees' shed exist in an adjacent subdivision. Appellants assert that sheds in another subdivision have no relevance to this case because they are not subject to the same Declaration of Restrictions.
Initially, we note that a court must be especially cautious in granting injunctions. Danis Clarkco Landfill Co. v.Clark Cty. Solid Waste Mgt. Dist. (1995), 73 Ohio St.3d 590,604. Nevertheless, a trial court enjoys broad discretion in deciding whether to issue an injunction. Id.; Garono v. State
(1988), 37 Ohio St.3d 171, 173. Absent an abuse of discretion, an appellate court should not reverse a trial court's decision regarding injunctive relief. Id. An abuse of discretion implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. In re Jane Doe 1 (1990), 57 Ohio St.3d 135;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
We agree with appellants that the presence of storage sheds and pole barns in adjoining subdivisions has little or no relevance to the enforceability of the Declaration of Restrictions, Paragraph 1, governing Indian Meadows Plat One. Nevertheless, when a trial court states an erroneous basis for its judgment, we must still affirm that judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error was not prejudicial.Agricultural Ins. Co. v. Constantine (1944), 144 Ohio St. 275,284; Jackson v. Ohio Bur. of Workers' Comp. (1994), 98 Ohio App.3d 579,585; Newcomb v. Dredge (1957), 105 Ohio App. 417, 424. This legal standard is applicable to the present case.
The rules of construction for restrictive covenants are based on the principle that restrictions on the free use of land are disfavored. Benner v. Hammond (1996), 109 Ohio App.3d 822. Unless they are contrary to public policy, land use restrictions designed to implement a general building scheme or plan for the development of a particular area of property to make it more attractive are usually enforceable. Dixon v. Van Sweringen Co.
(1929), 121 Ohio St. 56, paragraph one of the syllabus. The general building scheme or plan may be written or may be evidentde facto from the appearance of a subdivision. PrestwickLandowners' Assn. v. Underhill (1980), 69 Ohio App.2d 45; D NDevelopment Co. v. Schrock (Mar. 29, 1990), Tuscarawas App. No. 89AP080066, unreported.
The goal of interpreting the language of the restrictive covenant is the determination of the intent of the parties as reflected by the language used in the restriction. Hitz v. Flower
(1922), 104 Ohio St. 47, 57; Dean v. Nugent Canal Yacht Club, Inc.
(1990), 66 Ohio App.3d 471, 475. The court must construe the language of the restriction by giving it its common and ordinary meaning, Devendorf v. Akbar Petroleum Corp. (1989), 62 Ohio App.3d 842, and read the restrictive covenants as a whole to ascertain the intent of the creator(s), LuMac Dev. Corp. v. Buck Point Ltd.Partnership (1988), 61 Ohio App.3d 558. When a restriction's language is indefinite, doubtful, and capable of contradictory interpretations, courts are to construe the restriction in favor of the free use of land. Id. However, courts must enforce a restriction where it is clear and unambiguous. Id.
Here, the first sentence of the restriction requires prior approval before the construction of a "structure." A shed could fall within the definition of a "structure," i.e., something, such as a building, that is constructed. Merriam Webster's Collegiate Dictionary (10 Ed. 1996) 1167. Nevertheless, the remainder of the paragraph devotes itself to detailed requirements for "plans and specifications" that must be drawn up by a "competent" architect or draftsman and that include such items as "architectural design" and a "grading plan." The language in the restriction and the definition of a structure suggest that the restriction applies to "structures" of a permanent nature which require careful design and planning. In the case before us, David Collette's testimony and exhibit showing his storage shed disclose a prefabricated moveable white metal shed that was assembled by David's father-in-law. It did not necessitate the use of any architectural design or grade elevation/grading plan or preparation by an architect or draftsman. It is not a structure having characteristics of a permanent or semi-permanent nature. Accordingly, if we follow the clear and unambiguous language of the restriction, appellees were not required to obtain the approval of the Architectural Control Committee before placing the shed on their property.
Furthermore, the Declaration of Restrictions, when read as a whole, specifically names prohibited items that are not "structures or improvements." These include clotheslines, vegetable gardens, the storage of motor vehicles, television antennas and satellite dishes and wells (water, gas, oil). In fact, the Declaration of Restrictions mandates the manner in which the residents of Indian Meadows can dispose of their trash, that is, their rubbish and debris. If the developers had the intent to prohibit the use of free standing storage sheds, they could have easily included them in their list of restrictions. They did not do so.
For these reasons, the trial court did not abuse its discretion in declining to issue an injunction to enforce Paragraph 1 of the Declaration of Restrictions. Accordingly, appellant's first assignment of error is found not well-taken.
In their second assignment of error, appellants urge that the trial court committed error by relying on hearsay testimony to reach its decision. Again, because the resolution of this case rests on the construction of the Declaration of Restrictions, the trial court's reliance on hearsay testimony, if any, was not prejudicial to appellants' cause. Appellants' second assignment of error is found not well-taken.
The judgment of the Wood County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] An "improvement" is defined as "something that enhances value or excellence." Merriam Webster's Collegiate Dictionary,supra, at 585. We are of the opinion that a metal storage shed does not fit this definition.