JOURNAL ENTRY AND OPINION
{¶ 1} Robert Gross appeals from an order of the trial court that granted a temporary restraining order and preliminary injunction in favor of Gross's former employer, Mike McGarry 
Sons, Inc. ("McGarry Sons"). The order barred Gross from operating his own painting company in violation of a noncompetition clause he signed in conjunction with a shareholder agreement with his employer, McGarry Sons. Gross asserts that McGarry Sons failed to prove entitlement to such a remedy, that the trial court failed to consider the merits of Gross's counterclaim, and that it applied the wrong standard of review. We affirm.
 {¶ 2} The record reveals that Gross was employed by McGarry 
Sons, a residential and commercial painting company, for over twenty years. Although Gross had previously left his employment at McGarry Sons to operate a competing business, Gross returned and completed his tenure by working as an at-will sales manager whose duties included preparing bids and negotiating prices for new jobs.
 {¶ 3} In 2001, McGarry Sons began transferring ownership of the company. On July 1, 2001, a close corporation agreement was executed which made Gross a shareholder in the painting company.[1] With the execution of the agreement, Gross was required to sign and adhere to a noncompetition, noninterference and nondisclsoure policy. Under this policy, shareholders were prohibited from competing with McGarry Sons for three years after the termination of their employment. Shareholders were also prohibited from inducing or attempting to induce employees to terminate their employment with McGarry Sons and from disclosing or using confidential information concerning McGarry 
Sons. Gross signed the agreement and became a shareholder of the company.
 {¶ 4} In approximately November 2004, following a disagreement with McGarry Sons over allowing a single shareholder to purchase additional shares of stock, Gross left McGarry Sons.[2] In January 2005, Gross formed Ann Bob Gross LLC, a company which engaged in both residential and commercial painting. Shortly after forming the company, Michael Langdon and William Bogotay, former employees of McGarry Sons, began working for Gross.
 {¶ 5} In March 2005, McGarry Sons filed a complaint alleging, among other causes of action, breach of the noncompete clause in the shareholder provisions of the close corporation agreement, tortious interference with business relationships and unfair competition. They sought a three-year injunction and in excess of $25,000 in damages.
 {¶ 6} Two months later, McGarry Sons moved for a temporary restraining order ("TRO") prohibiting Gross from operating Ann 
Bob Gross LLC. Shortly thereafter, Gross filed a counterclaim for wrongful termination.
 {¶ 7} In June 2005, the trial court granted the TRO and issued a preliminary injunction barring Gross from operating Ann Bob Gross LLC. It is from this order that Gross appeals in the assignments of error set forth in the appendix to this opinion.
 {¶ 8} In his first and third assignments of error, Gross asserts error in the trial court's grant of both the TRO and preliminary injunction and claims that the evidentiary record failed to demonstrate entitlement to such a remedy. He additionally asserts that the trial court applied the wrong standard in evaluating the elements of the order. We address both assignments of error together for purposes of appeal.
 {¶ 9} The issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court, and a reviewing court will not disturb the judgment of the trial court in the absence of a clear abuse of discretion. Garono v. State
(1988), 37 Ohio St.3d 171, 173. Further, in determining whether to grant an injunction, a court must look at the specific facts and circumstances of the case. Keefer v. Ohio Dept. of Job andFamily Services Franklin App. No. 03AP-391, 2003-Ohio-6557, at ¶ 14.
 {¶ 10} A party requesting a preliminary injunction must show that: (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction. Procter Gamble Co. v. Stoneham (2000),140 Ohio App.3d 260, 267.
 {¶ 11} Each element must be established by clear and convincing evidence. Procter Gamble, supra. Clear and convincing evidence is the measure or degree of proof more than a mere "preponderance of the evidence," but less than "beyond a reasonable doubt" required in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. CincinnatiBar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122. However, in determining whether to grant injunctive relief, no one factor is dispositive. Cleveland v. Cleveland Elec. Illum. Co. (1996),115 Ohio App.3d 1, 14. The four factors must be balanced with the "flexibility which traditionally has characterized the law of equity." Id.
 {¶ 12} In accord with the above-referenced standard, McGarry Sons asserted entitlement to a preliminary injunction, claiming a substantial likelihood that it would prevail on the merits of the case. It cited to Article X of the shareholder agreement, entitled "Noncompetition; Noninterference; Nondisclosure," which states in pertinent part:
"10.1 Noncompetition. Each Listed Shareholder acknowledges and recognizes the highly competitive nature of the business conducted by the Corporation and accordingly, agrees that, during the term of his employment with the Corporation and for a period of three (3) years following any termination thereof, he shall not, without the prior written consent of the Corporation, either directly or indirectly operate or perform any advisory or consulting services for, invest in (* * *), or otherwise become associated with in any capacity, any Person which develops, manufacturers, prepares, sells or distributes products or performs services then in competition with the products developed, manufactured, prepared sold or distributed or services rendered by the Corporation or any of its subsidiaries or affiliates then develops, manufactures, sells or distributes such products or performs such services.
10.2 Noninterference. Each Listed Shareholder agrees that he shall not at any time induce, attempt to induce, or assist others in inducing or attempting to induce any employee, agent or supplier of the Corporation or any of its subsidiaries or affiliates or any other Person associated or doing business with the Corporation or any of its subsidiaries or affiliates other than as a customer (* * *)to terminate its relationship with the Corporation or any of its subsidiaries or affiliates (* * *) or in any other manner to interfere with the relationship between the Corporation or any of its subsidiaries or affiliates and any such Person.
10.3 Nondisclosure. Each Listed Shareholder agrees not to disclose or use, directly or indirectly, any Confidential Information, at any time. For purposes of this Section 10.3, "Confidential Information" means all information belonging to, used by, or which is in the possession of the Corporation, any of its subsidiaries or affiliates or Listed Shareholder relating to the Corporation's or any of its subsidiaries' or affiliates' business to the extent such information is not intended to be disseminated to the public generally or is otherwise not generally known to competitors of the Corporation * * *. Each Listed Shareholder acknowledges that all of the Confidential Information will be the exclusive proprietary property of the Corporation and its subsidiaries and affiliates, whether or not prepared in whole or in part by a Listed Shareholder and whether or not disclosed or entrusted to the custody of the Corporation."
 {¶ 13} Under the terms of the agreement, Gross, and therefore any company that he might form, would be expressly prohibited from competing with McGarry Sons, from soliciting McGarry 
Sons' employees, and from providing services to McGarry Sons' clients within a certain radius.
 {¶ 14} The record reflects that the full shareholder agreement and its express terms were submitted to the trial court. In addition to the document itself, the trial court heard the testimony of Brendan McGarry who informed the court that all of the clients that Gross admitted to conducting business with were McGarry Sons' clients. (Tr. 67). Further testimony indicated that two former McGarry Sons employees, Langdon and Bogotay, left McGarry Sons after Gross started his own painting company and began new employment with Gross. (Tr. 46-51).
 {¶ 15} After conducting a full hearing, the trial court granted the motion for a TRO and preliminary injunction. The court relied on the terms of the shareholder agreement and found that "the shareholders agreement, as the evidence presented so far, is in effect, and defendant Gross did knowingly, voluntarily, without threat or duress sign it and participated * * *." (Tr. 182). The trial court went on to echo Brendan McGarry's testimony in finding that, "he has all the same clients in which this plaintiff company had acquired all throughout the years, and every one of his clients today are theirs, were theirs; so he did directly compete and [sic] violated." (Tr. 186). For these reasons, the trial court found that McGarry 
Sons showed a likelihood of success on the merits, that the noncompete clause was effective, and that a two-hour radius was reasonable under the circumstances. (Tr. 183).
 {¶ 16} It is clear that the record before the trial court contained clear and convincing evidence of McGarry Sons likelihood of success on the merits. It is therefore clear that the trial court did not abuse its discretion in making such a finding.
 {¶ 17} There has been some suggestion that since the noncompete provisions of the shareholder agreement were silent as to the radius of coverage, that the trial court erred in inserting a noncompetition radius of two hours travel outside of Cleveland. However, and as the Ohio Supreme Court held inRaimonde v. Van Vlerah (1975), 42 Ohio St.2d 21, 25-26:
"[A] covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public. Courts are empowered to modify or amend employment agreements to achieve such results."
 {¶ 18} Therefore, the trial court was within its power to impose a two-hour radius restriction on the noncompete provision. For these reasons, we find that there was clear and convincing evidence of McGarry Sons' likelihood of success on the merits. Under the second prong of the preliminary injunction test, McGarry Sons alleged that it would suffer irreparable harm in the form of damage to its customer relationships. Irreparable harm is harm for which there is no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete. Cleveland Elec. Illum. Co., supra. The record reflects that McGarry Sons sought to enforce the noncompetition provisions of the shareholder agreement and named five companies that Gross had solicited, all of which had been previous McGarry Sons' customers. The trial court specifically relied upon this contention and found that,
"Mr. Gross testified that all the people in his company is [sic] doing business for were the clients of the Plaintiff, every single one of them were the clients of the Plaintiff. Isn't that the purpose of a noncompete, is not to leave and take their clients, to protect them for a reasonable period of time and restrictive period of time?
Wouldn't common sense, as you've been throwing out throughout these hearings, tell you that when you take the clients of the former employer that you are hurting and irreparably harming their business interests and their ability to continue to earn and make a living?
* * *
Here your clients didn't go out and get other contracts. They seem to be all the same people, that this company has been long standing, they have all used and — used as clients over the past."
(Tr. 164-165).
 {¶ 19} Gross takes issue with McGarry Sons' assertion of irreparable harm, and specifically challenges Brendan McGarry's failure to properly define the "irreparable harm" that the business suffered. However, other courts have held that, "[w]hen there is a strong likelihood of success on the merits, preliminary injunctive relief may be justified even though plaintiff's case of irreparable injury may be weak. In other words, what plaintiff must show as to the degree of irreparable harm varies inversely with what plaintiff demonstrates as to its likelihood of success on the merits." Blakeman's Valley OfficeEquip., Inc. v. Bierdeman, 152 Ohio App.3d 86, 2003-Ohio-1074, quoting Cleveland Elec. Illum. Co, supra.
 {¶ 20} Brendan McGarry testified that all of the clients that Gross admitted to conducting business with were McGarry Sons' clients. (Tr. 67). Attempting to start one's own business by taking away customers that were serviced by a former employer is precisely the type of irreparable harm that a covenant not to compete is designed to prevent. Robert W. Clark, M.D. v. Mt.Carmel Health (1997), 124 Ohio App.3d 308, 317.
 {¶ 21} We therefore find that clear and convincing evidence also existed as to the claim of irreparable harm, and that any apparent weakness in this assertion is supported by our previous determination of McGarry Sons' likelihood of success on the merits.
 {¶ 22} Under the third prong of the preliminary injunction test, McGarry Sons submitted that no third parties would be irreparably harmed if the injunction is granted and the public interest will be served by granting the injunction. We agree.
 {¶ 23} As noted by the trial court, paragraph 11.7 of the shareholder agreement, entitled "Injunctive Relief" provides that:
"Each Listed Shareholder acknowledges that it will be impossible to measure in money the damage to the Corporation and to the other shareholders if there is a failure to comply with this Agreement. It is therefore agreed that the Corporation, in addition to any other rights or remedies which it may have, shall be entitled to immediate injunctive relief and to specific performance to enforce this Agreement, without the necessity of proving damages or posting any bond, and that if any action or proceeding is brought in equity to enforce it, no Listed Shareholder will urge, as a defense, that there is an adequate remedy at law."
 {¶ 24} The plain language of the shareholder agreement forbids Gross from operating a business that directly competes with McGarry Sons. The trial court, in interpreting this document, restricted the agreement to a two-hour radius outside of Cleveland. The trial court cited to the fact that upholding the agreement was in the public interest and that business interests and legitimate business reasons operated in favor of enforcing such an agreement. (Tr. 185). It also recognized that ordering a preliminary injunction would stop Gross's business but found that this was necessary because of Gross's acknowledgment of the shareholder agreement by signing it several years prior. (Tr. 186). Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest. UZ Engineered Products Co. v. Midwest MotorSupply Co., Inc., 147 Ohio App.3d 382, 397, 2001-Ohio-8779.
 {¶ 25} For this reason, and based upon the plain language of paragraph 11.7, we find that the record contained clear and convincing evidence as to the third and fourth prongs of the test for a preliminary injunction.
 {¶ 26} Finally, Gross contends in his third assignment of error that the trial court wrongly applied a preponderance of the evidence standard in evaluating the elements of McGarry Sons' claim. We disagree.
 {¶ 27} Gross cites to the trial court's statement that, "[b]ut with regard to the success on the merits of the case, which, again, is what I have to consider in making my ruling, and which I have one, there is more likely than not going to be a success on the merits of the case of the plaintiff; that the noncompete clause is effective, that its two hour radius is reasonable under the circumstances." (Tr. 183). This statement, taken in isolation, is not indicative of the evidence proffered before the trial court and of the trial court's complete analysis.
 {¶ 28} It is clear from the record and this court's prior analysis of that record, that the trial court used the proper standard of review in analyzing the evidence before it. We reiterate our finding that McGarry Sons proved, and the trial court found, by clear and convincing evidence, McGarry Sons was entitled to a preliminary injunction.
 {¶ 29} Gross's first and third assignments of error lack merit.
 {¶ 30} In his second, and now final, assignment of error, Gross asserts that the trial court failed to consider the likelihood of success on his counterclaim. Gross cites no case law in support of his argument, and instead only asserts that his claim of constructive termination would negate enforcement of the noncompete agreement.
 {¶ 31} The express language of the shareholder agreement, non-competition provision, Article X, paragraph 10.1, states that "Each Listed Shareholder * * * agrees that, during the term of his employment with the Corporation and for a period of three (3) years following any termination thereof, he shall not, * * * operate or perform any advisory or consulting services for, invest in * * *, or otherwise become associated with in any capacity, any Person which develops, manufacturers, prepares, sells or distributes products or performs services then in competition * * *." (Emphasis added.) The plain language of the agreement fails to define "termination" or even to distinguish termination from resignation, and we find that such a distinction has no bearing on the grant of a preliminary injunction. Further, the trial court acknowledged that, "I'm not going to go ahead and decide whether or not he was wrongfully terminated, as this hearing wasn't about the counterclaim." (Tr. 183).
 {¶ 32} The issues surrounding any alleged wrongful termination were not called for a full hearing before the trial court and, therefore, the trial court did not expressly rule on Gross's counterclaims. As such, this issue is not properly before this court.
 {¶ 33} Gross's second assignment of error lacks merit.
 {¶ 34} The ruling of the trial court is affirmed.
 {¶ 35} This case is returned to the trial court for disposition on the remaining issues.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and McMonagle, J. Concur.
 APPENDIX ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THEDEFENDANT-APPELLANT WHEN IT GRANTED THE PLAINTIFF-APPELLEE'SMOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIONPREVENTING THE APPELLANT FROM BREACHING A NON-COMPETITIONAGREEMENT THEREBY COMMITTING AN ABUSE OF DISCRETION AS THEEVIDENTIARY RECORD DID NOT DEMONSTRATE THAT THEPLAINTIFF-APPELLEE HAD PROVED ITS ENTITLEMENT TO EITHER EQUITABLEREMEDY BY CLEAR AND CONVINCING EVIDENCE.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THEDEFENDANT-APPELLANT WHEN IT GRANTED THE PLAINTIFF-APPELLEE'SMOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIONAFTER REFUSING TO CONSIDER THE LIKELIHOOD OF THE APPELLANT'SSUCCESS ON THE MERITS OF A COUNTER-CLAIM DIRECTLY INTERTWINEDWITH THE ALLEGATIONS IN SUPPORT OF THE TEMPORARY RESTRAININGORDER AND PRELIMINARY INJUNCTION.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THEDEFENDANT-APPELLANT BY APPLYING A PREPONDERANCE OF THE EVIDENCEBURDEN OF PROOF STANDARD IN EVALUATING THE ELEMENTS OF THEPLAINTIFF-APPELLEE'S MOTION FOR TEMPORARY RESTRAINING ORDER ANDPRELIMINARY INJUNCTION."
[1] We note that the agreement entered into between the parties was captioned a "Close Corporation Agreement," however, the close corporation agreement contained multiple provisions regarding Gross' new status as a shareholder. Due to the nature of this agreement, and the fact that all employees were not required to sign this agreement as a condition of employment, and because the trial court consistently referred to the agreement as a "shareholder agreement," for consistency, we also refer to this agreement as a "shareholder agreement."
[2] Gross claims that he was terminated by McGarry Sons, while McGarry Sons maintain that Gross resigned his employment.