KLN LOGISTICS CORPORATION, Appellee,

v.

NORTON, Appellant.

[Cite as *KLN Logistics Corp. v. Norton*, 174 Ohio App.3d 712, 2008-Ohio-212.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89628.

Decided Jan. 24, 2008.

Kenneth F. Seminatore, for appellee.

The Norton Law Firm Co., LPA, and Eric Norton, for appellant.

MELODY J. STEWART, Judge.

{¶ 1} This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the record from the lower court, the briefs, and the oral arguments of counsel.

{¶ 2} Defendant-appellant, Jeffrey Norton, appeals the trial court's judgment granting plaintiff-appellee, KLN Logistics Corp. ("KLN"), a preliminary injunction against him and finding him in civil contempt of court for violating the terms of a previously issued temporary restraining order. For the reasons stated below, we affirm the judgment of the trial court.

{¶ 3} In November 2005, Kimberly Giering, owner and president of KLN, a freight-forwarding company, hired appellant as an operations agent. As part of the terms of employment, appellant signed a "Nondisclosure and Noncircumvention Agreement," in which he agreed not to "in any way whatsoever circumvent" KLN or disclose or use for personal gain certain proprietary information without prior written permission from the company.

{¶ 4} The agreement defined "proprietary information" as "information relating to financial institutions and sources, trade secrets, methodologies, personal and business contacts, or business plans" of the company. The agreement stated that the company was disclosing "proprietary information" to the employee with the understanding that a "fiduciary relationship has been established" among them. The agreement was to remain in effect for three years following appellant's termination of employment.

{¶ 5} Through his employment with KLN, appellant was introduced to Brian Harward. Harward is an internet electronics trader and owner of Harton Innovations, d.b.a. Electronics Nation, and was a new account with KLN. Appellant worked with Harward, servicing the Electronics Nation account for KLN. In October 2006, appellant informed KLN that he was leaving its employ and going to work for Harward. Just prior to appellant's going to work for Harward, Electronics Nation ceased using KLN's services.

{¶ 6} On October 18, 2006, KLN filed a complaint and a motion for a temporary restraining order ("TRO") and a preliminary injunction against appellant. KLN sought to enforce the terms of the nondisclosure/noncircumvention agreement.

{¶ 7} On October 20, 2006, after a hearing, the trial court granted the TRO and set the matter of the preliminary injunction for hearing on November 9, 2006. After granting appellant a continuance, the court conducted a hearing on the preliminary injunction on December 28, 2006. The court heard testimony from Giering, Harward, and appellant.

{¶ 8} Following the hearing, the court invited both sides to submit a proposed entry and supporting case law for consideration. On February 28, 2007, the trial court granted the preliminary injunction against appellant and found appellant in contempt for violating the TRO by continuing his business relationship with Harward to KLN's detriment.

{¶ 9} Appellant presents two assignments of error for our review. The first assignment asserts that the trial court abused its discretion by granting the preliminary injunction in KLN's favor. The second assignment asserts that the trial court abused its discretion in holding appellant in contempt for accepting and maintaining employment with one of KLN's former customers.

{¶ 10} Injunctions are an extraordinary remedy, equitable in nature, and their issuance may not be demanded as a matter of right. *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595, syllabus. "The issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court will not disturb the judgment of the trial court in the absence of a clear abuse of discretion." *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 653 N.E.2d 646, paragraph three of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. When applying the abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. *Sinoff v. Ohio Permanente Med. Group* (2002), 146 Ohio App.3d 732, 740, 767 N.E.2d 1251.

{¶ 11} "[A] preliminary injunction is an extraordinary remedy; therefore, the moving party has a substantial burden to meet in order to be entitled to the injunction." Id., citing *Ormond v. Solon* (Oct. 18, 2001), Cuyahoga App. No. 79223, 2001 WL 1243959. "The moving party must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim." Id., citing *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.* (1996), 109 Ohio App.3d 786, 673 N.E.2d 182.

{¶ 12} In deciding whether to grant a preliminary injunction, a court must look at four factors: (1) whether there is a substantial likelihood that plaintiff will prevail on the merits, (2) whether plaintiff will suffer irreparable injury if the injunction is not granted, (3) whether third parties will be unjustifiably harmed if the injunction is granted, and (4) whether the public interest will be served by the injunction. Id.

{¶ 13} No one factor is dispositive. *Cleveland v. Cleveland Elec. Illum. Co.* (1996), 115 Ohio App.3d 1, 14, 684 N.E.2d 343. When there is a strong

likelihood of success on the merits, preliminary injunctive relief may be justified even though a plaintiff's case of irreparable injury may be weak. Id.

{¶ 14} Appellant argues that there is little likelihood that KLN can prevail on the merits of its claim. He argues that his accepting of an offer of employment from Harward does not violate the express terms of the agreement he signed with KLN.

{¶ 15} KLN argues that once appellant had conceded that KLN's customer or business contacts qualify as trade secrets, the argument over the propriety of the preliminary injunction is at an end. KLN claims that appellant used its proprietary information for his benefit and to KLN's detriment.

{¶ 16} It is undisputed that the employment agreement at issue in this case is not a non-compete agreement. Both parties concede that the agreement does not prevent appellant from going to work for Harward. The agreement prohibits appellant from disclosing KLN's proprietary information or otherwise circumventing KLN by using that proprietary information for his own personal gain and to KLN's detriment.

{¶ 17} In this case, the parties agree that KLN's customer or business contacts qualify as trade secrets and are confidential information. It is undisputed that appellant met Harward through appellant's employment with KLN. KLN argues that by its express terms, the written agreement prohibits appellant from using KLN's business contact and business relationship with Harward for his own personal gain without first getting written permission.

{¶ 18} Giering testified to the relationships she had developed over the years with numerous vendors, suppliers, and customers in the freight-forwarding industry and to the specialized services that KLN provided. She explained that appellant was given access to KLN's confidential information, including customer lists, rates, profit margins, and other business information. She stated that KLN was one of the few companies that could offer insurance on the plasma televisions that Electronics Nation sold as part of its shipping services. She stated that KLN's insurance information and the rates charged are part of the confidential information that the agreement sought to protect.

{¶ 19} Giering also testified that she had been working with Harward on plans to have KLN take over the warehousing for his companies and had leased a larger facility to be able to handle this business. She stated that she had worked for months to set up Harward's account and believed that if not for appellant's actions, Harward would still be using KLN's services. Giering testified that after appellant quit, she discovered that he had been using KLN's computer for more than a month to research warehousing facilities for Harward. Giering claimed that appellant also alienated another of KLN's accounts just prior to his quitting

and that he told this other account that he could save them money on their shipping.

{¶ 20} Appellant did not deny using the computer to try and find warehousing for Harward, but claimed that he did the research on his lunchtime, not on company time. Appellant also admitted that he handled locating warehouse docking space for Electronics Nation in his new job. Appellant stated that he was receiving a salary for his employment with Harward, but would be getting a percentage of the profits beginning in 2007. Appellant testified that he willingly signed the nondisclosure/noncircumvention agreement but thought it prevented him only from disclosing KLN's rates to competitors. He said that Harward approached him about going to work for him. He stated that he did not tell Harward that he had signed an employment agreement with KLN because, "for me, non-circumvention, nondisclosure, means that I won't disclose her information to her competitors."

{¶ 21} Circumvent means "to avoid or get around by artful maneuvering."[1] KLN presented evidence at the hearing to show that appellant, while employed by KLN and in a fiduciary relationship, spent considerable time researching how to go into business with Harward. As a result of his actions, appellant shares in Harward's business profits while KLN no longer has Harward's shipping or warehousing business. Based upon these facts, we cannot find that the trial court clearly abused its discretion in granting the preliminary injunction. Appellant's first assignment of error is overruled.

{¶ 22} In his second assignment of error, appellant argues that the wording of the temporary restraining order did not expressly forbid him from continuing his business relationship with Harward or his employment with Electronics Nation and, therefore, the trial court erred in its finding of contempt.

{¶ 23} "Courts may punish disobedience of their orders or enforce them in contempt proceedings." *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 252, 648 N.E.2d 1355, citing *State ex rel. Adkins v. Sobb* (1988), 39 Ohio St.3d 34, 35, 528 N.E.2d 1247. "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the [court]." Id., citing *Denovchek v. Trumbull Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362. "The court that issued the order sought to be enforced is in the best position to determine if that order has been disobeyed." Id. Therefore, we will not reverse the trial court's finding of contempt absent a clear showing of an abuse of discretion. See *Rausch v. Rausch*, Cuyahoga App. Nos. 87000 and 87147, 2006-

---

1. The American Heritage Dictionary of the English Language (4th Ed.2004).

Ohio-3847, 2006 WL 2100279. Intent to violate the order need not be proved in civil contempt. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 15 OBR 285, 472 N.E.2d 1085, paragraph one of the syllabus.

{¶ 24} The trial court's October 20, 2006 order temporarily enjoined appellant from "taking any action resulting in the disclosure or communication to any party of any Proprietary Information as defined in the November 7, 2005 Non-disclosure and Non-circumvention Agreement" or "from having other communication with any present customer, employee and/or prospect of [KLN], including without limitation by serving or otherwise consulting with any competing individual or group, and/or by soliciting any business from any current or potential customers of [KLN] by use of the Proprietary Information, or otherwise, or from disparaging [KLN] with any present or potential customer, and/or soliciting any of the employees of [KLN]."

{¶ 25} We find no merit to appellant's argument that because Electronics Nation had ceased doing business with KLN before the TRO was issued, it was not a "present customer" or "prospect" of KLN. The trial court found that Electronics Nation ceased being a current customer of KLN as a result of appellant's misconduct, but remained a prospective customer of KLN. This finding is supported by evidence in the record, including Harward's own testimony that he told KLN that he hoped the "door would remain open" for them to do business again in the future should appellant not work out at Electronics Nation.

{¶ 26} However, even with this finding, we cannot determine from the record exactly what action appellant has taken that violates the TRO. There are no allegations that appellant has been using KLN's proprietary information when shipping Electronics Nation's goods since the TRO was issued. The record reflects that appellant is still in charge of shipping for Electronics Nation, but has stopped using accounts that KLN used, such as Forward Air and Towne Air, since the TRO was granted. Appellant testified that he had not applied for accounts with different agents since the TRO and had limited Electronics Nation to shipping with companies that Harward had used prior to coming to KLN. Appellant stated that they were using carriers such as UPS and FedEx. Without evidence of something more than mere continued employment with Harward and Electronics Nation, which KLN has conceded is not precluded, there is no evidence that appellant violated the terms of the TRO as written.[2]

{¶ 27} We therefore find the trial court's action in finding appellant in contempt for violating the terms of the TRO and imposing a sanction of $50 per

---

2. We note that the trial court adopted the language for the TRO from that proposed by KLN's counsel.

day to be an abuse of discretion. Appellant's second assignment of error is sustained.

{¶ 28} We affirm the trial court's judgment granting the preliminary injunction, reverse the judgment finding appellant in contempt, and vacate the order imposing a $50 per day sanction. This cause is remanded to the trial court.

Judgment accordingly.

McMONAGLE, P.J., and CELEBREZZE, J., concur.