[Cite as *Newburgh Hts. v. State*, 2021-Ohio-61.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

VILLAGE OF NEWBURGH HEIGHTS,
ET AL.,                                    :

       Plaintiffs-Appellants,           :

                                               Nos. 109106 and 109114

       v.                                       :

STATE OF OHIO,                             :

       Defendant-Appellee.              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND
             REMANDED
**RELEASED AND JOURNALIZED:** January 14, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-917408

---

### *Appearances:*

Willa M. Hemmons, City of East Cleveland Director of
Law, *for appellant* City of East Cleveland.

Nicola, Gudbranson & Cooper, L.L.C., Luke F. McConville,
and Michael E. Cicero, *for appellant* Newburgh Heights.

Dave Yost, Ohio Attorney General, and Halli Brownfield
Watson, and Renata Y. Staff, Assistant Attorneys General,
*for appellee.*

MARY J. BOYLE, A.J.:

{¶ 1} Plaintiffs-appellants, Village of Newburgh Heights ("Newburgh Heights") and the city of East Cleveland ("East Cleveland"), appeal from a trial court judgment denying their motion for a preliminary injunction. Newburgh Heights raises the following three assignments of error:

> 1. The trial court abused its discretion when it denied Newburgh Heights' motion for preliminary injunction based on its finding that Newburgh Heights had not established immediate irreparable injury.
>
> 2. The trial court erred by failing to conclude that * * * Newburgh Heights was likely to succeed on the merits of its argument that Amended House Bill 62 violates the Home Rule Amendment of the Ohio Constitution.
>
> 3. The trial court erred in failing to grant the preliminary injunction, because there was no possibility of substantial harm to the State of Ohio or other third parties, and granting of the preliminary injunction was clearly in the public interest.

{¶ 2} East Cleveland raises the following four assignments of error:

> 1. The trial court abused its discretion when it denied East Cleveland's motion for preliminary injunction based on its finding that East Cleveland had not established immediate irreparable injury, despite East Cleveland's uncontested evidence establishing irreparable harm to the public safety of its citizens.
>
> 2. The trial court erred by failing to conclude that the City was likely to succeed on the merits of its argument that Amended House Bill 62 violates the Home Rule Amendment of the Ohio Constitution even though the Ohio Supreme Court precedent establishes that municipalities' Home Rule authority to implement photo enforcement programs cannot be unconstitutionally burdened or penalized by the State.
>
> 3. The trial court erred by failing to conclude that the City was likely to succeed on the merits of its argument that Amended House Bill 62 violates the separation of powers doctrine of the Ohio Constitution where the State improperly circumvented the Ohio Supreme Court's

decisions holding that municipalities' Home Rule authority to implement photo enforcement programs cannot be unconstitutionally burdened or penalized by the State.

4. The trial court erred by failing to conclude that the City was likely to succeed on the merits of its argument that Amended House Bill 62 violates the one-subject rule of the Ohio Constitution where the contested provisions of H.B. 62 were inserted as amendments to an appropriations bill on the eve of its passage.

{¶ 3} After review, we agree with the cities that the trial court erred when it denied their motion for a preliminary injunction with respect to their second and fourth contested provisions (reduction of local government funds and paying advance court costs). We therefore reverse the trial court's decision with respect to these two provisions. Regarding the cities' third contested provision (exclusive jurisdiction of municipal courts), however, we affirm the trial court's decision denying the preliminary injunction. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. Procedural History

### A. Trial Court

{¶ 4} On June 27, 2019, Newburgh Heights filed a complaint in the Cuyahoga County Court of Common Pleas, seeking a declaratory judgment and a motion for preliminary and permanent injunction against defendant-appellee, the state of Ohio, asking the court to enjoin the enforcement of certain provisions of 2019 Am.Sub.H.B. No. 62 ("H.B. 62"), which was set to become effective on July 3, 2019. Newburgh Heights alleged that the challenged provisions impermissibly

infringed upon Ohio municipalities' home rule authority to enact and operate traffic photo enforcement programs.

{¶ 5} On August 14, 2019, East Cleveland filed a motion to intervene, a complaint, and a motion for preliminary and permanent injunction, also challenging provisions of H.B. 62. The state did not object to East Cleveland intervening, and the trial court granted East Cleveland's motion to intervene.

{¶ 6} The plaintiffs challenged the following provisions of H.B. 62: (1) the requirement that a law enforcement officer be present at every photo enforcement device location at all times during operation, (2) reducing the local government fund allocation by amounts collected from drivers who paid their traffic photo citation and eliminating local government funds for local authorities that fail to report revenues from a photo enforcement program, (3) conferring "exclusive jurisdiction" over such actions to municipal and county courts that eliminated a local authority's ability to appoint administrative hearing officers to adjudicate photo enforcement tickets, and (4) requiring local authorities to provide advance and non-recoverable court deposits to cover "all applicable court costs and fees" for civil actions related to the photo enforcement programs.

{¶ 7} After a hearing on the parties' motions for preliminary injunction, the trial court denied them in part and granted them in part in October 2019. The trial court granted the motions with respect to the first contested provision, i.e., the requirement that a law enforcement officer be present at every photo enforcement

device location at all times during operation. The trial court denied the motions regarding the remaining contested provisions.

## B. Appellate Background

{¶ 8} The cities appealed the trial court's decision denying their motions for preliminary injunction with respect to their second, third, and fourth contested provisions. This court consolidated the cases. The cities requested a stay in the trial court, which the trial court denied. The cities also requested this court to issue an injunction pending appeal. On December 4, 2019, this court issued the following order:

> Motion by appellant City of East Cleveland for injunction pending appeal is granted in part. The state of Ohio is enjoined, pending the resolution of this appeal, from enforcing the contested provisions in H.B. 62 concerning (1) conferring exclusive jurisdiction over traffic camera tickets to municipal and county courts and (2) requiring local authorities to provide advance and non-recoverable court deposits to cover all applicable costs and fees pertaining to the tickets. The provision reducing the local government fund allocation does not become effective until July 25, 2020; therefore, there is no immediate irreparable harm as to that provision. The trial court has already granted an injunction regarding the requirement that a law enforcement officer be present at every traffic camera location. Once briefing is complete, the appeal shall be set for hearing at the earliest feasible date.

{¶ 9} In early July 2020, plaintiffs requested that this court reconsider the "irreparable harm determination" with respect to the second contested provision (a reduction in the local government fund allocation by the amounts collected from drivers who paid their traffic photo citation and eliminating local government funds

for local authorities that fail to report revenues from a photo enforcement program) because the state would act on the provision on July 25, 2020.

{¶ 10} This court granted plaintiffs' motions on July 22, 2020, treating them as renewed motions for an injunction pending appeal due to new circumstances that existed.

{¶ 11} We will discuss the cities' assigned errors and arguments out of order where necessary for ease of discussion.

## II. Preliminary Injunction

{¶ 12} The purpose of a preliminary injunction ordinarily is to preserve the status quo pending a trial on the merits. *Mears v. Zeppe's Franchise Dev.*, 8th Dist. Cuyahoga No. 90312, 2009-Ohio-27, ¶ 23. "An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot." *Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988). Because an injunction is an extraordinary remedy, "'the moving party has a substantial burden to meet in order to be entitled'" to a preliminary injunction. *KLN Logistics Corp. v. Norton*, 174 Ohio App.3d 712, 2008-Ohio-212, 884 N.E.2d 631, ¶ 11 (8th Dist.), quoting *Ormond v. Solon*, 8th Dist. Cuyahoga No. 79223, 2001 Ohio App. LEXIS 4654, 4 (Oct. 18, 2001). The party seeking the preliminary injunction must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim. *Id.*, citing *Vanguard Transp. Sys., Inc. v.*

*Edwards Transfer & Storage Co., Gen. Commodities Div.*, 109 Ohio App.3d 786, 790, 673 N.E.2d 182 (10th Dist.1996).

{¶ 13} When ruling on a motion for a preliminary injunction, the trial court must consider whether: (1) the movant has shown a strong or substantial likelihood or probability of success on the merits, (2) the movant has shown irreparable injury, (3) third parties will be harmed if the injunction is granted, and (4) the public interest would be served by issuing the preliminary injunction. *KLN Logistics Corp.* at ¶ 12, citing *Vanguard Transp. Sys.* at 790. No one factor is dispositive. *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 14, 684 N.E.2d 343 (8th Dist.1996). When there is a strong likelihood of success on the merits, preliminary injunctive relief may be justified even though a plaintiff's case of irreparable injury may be weak. *Id.* Conversely, where a party's likelihood of success on the merits is low, there must be a high likelihood of irreparable harm to justify injunctive relief. *Aids Taskforce of Greater Cleveland v. Ohio Dept. of Health*, 2018-Ohio-2727, 116 N.E.3d 874, ¶ 23 (8th Dist.).

{¶ 14} In Ohio, a statute cannot be invalidated or enjoined unless it is unconstitutional. This is because Article II, Section 1 of the Ohio Constitution confers all legislative power of the state on the General Assembly. "The General Assembly has plenary power to enact legislation[.]" *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, 941 N.E.2d 745, ¶ 10. Therefore, it may "enact any law that does not conflict with the Ohio or United States Constitution." *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio

St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 60.  For this reason, "'[b]efore any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision.'"  *Boyce* at ¶ 10, quoting *Williams v. Scudder*, 102 Ohio St. 305, 307, 131 N.E. 481 (1921).

{¶ 15} The power to invalidate and enjoin a statute is further "circumscribed by the rule[s] that laws are entitled to a strong presumption of constitutionality and that a party challenging the constitutionality of a law bears the burden of proving that the law is unconstitutional beyond a reasonable doubt."  *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.

{¶ 16} The decision as to whether such an injunction should be issued rests in the sound discretion of the court and will not be reversed absent an abuse of that discretion.  *Garono*, 37 Ohio St.3d at 173, 524 N.E.2d 496.  "Essentially, 'abuse of discretion' describes a judgment neither comporting with the record, nor reason." *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 13, citing *In re Wiley*, 11th Dist. Lake No. 2007-P-0013, 2007-Ohio-7123, ¶ 17.

**A. Likelihood of Success on the Merits**

{¶ 17} We will address the cities' second assignment of error first, i.e., whether the cities were likely to succeed on the merits of their motion with respect to the three contested provisions that are before us on appeal.  In their motions for preliminary injunction, the cities raised several constitutional arguments.  But their first argument was that the contested provisions of H.B. 62 violate the Home Rule

Amendment. The trial court, however, largely ignored these arguments.[1] Nonetheless, the trial court stated that any arguments not addressed in its opinion "are not well taken by this [c]ourt for purposes of these motions."

### 1. Home Rule Amendment

{¶ 18} The Home Rule Amendment, set forth in the Ohio Constitution, Section 3, Article XVIII, empowers municipalities to "exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶ 19} The phrase "as are not in conflict with general laws" in Section 3, Article XVIII of the Ohio Constitution, has been universally construed to place a limitation on a municipality's power to "adopt and enforce * * * local police, sanitary and other similar regulations," but not on the power of local self-government. *Hills & Dales, Inc. v. Wooster*, 4 Ohio App.3d 240, 242, 448 N.E.2d 163 (9th Dist.1982), citing *State ex rel. Canada v. Phillips*, 168 Ohio St. 191, 151 N.E.2d 722 (1958). "Police powers" encompass the areas of public health, safety, morals, and general welfare. *Hills & Dales* at *id.*

{¶ 20} In *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, the Ohio Supreme Court explained that courts use a three-part test to evaluate claims that a municipality has exceeded its powers under the Home Rule

---

[1] The trial court only addressed the cities' home-rule argument with respect to the first contested provision, which requires a police officer to be present at every automated traffic camera. This provision is not before us on appeal because the trial court granted the cities' motions with respect to this provision.

Amendment. First, courts must determine if the ordinance at issue is an exercise of the city's "police power," rather than of local self-government. *Id.* at ¶ 17, citing *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Id.* at ¶ 18, quoting *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.

{¶ 21} The second step of the *Mendenhall* test is necessary only if the city ordinance involves an exercise of police power. This step requires a court to determine whether the state law is a general law under the four-part test set forth in *Canton*. *Mendenhall* at ¶ 17, citing *Canton* at ¶ 9.

{¶ 22} The final step of the *Mendenhall* test is to determine whether the ordinance conflicts with the statute, i.e., whether the ordinance permits that which the statute forbids, and vice versa. If the ordinance conflicts with the general law, it will be held unconstitutional. *Id.* at ¶ 28. If there is no conflict, the municipal action is permissible even though the statute is a general law. *Id.*

{¶ 23} To qualify as a general law under the *Canton* test, a statute must

(1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

*Id.* at syllabus. If a statute meets the *Canton* general-law test, then the statute takes precedence over any conflicting municipal ordinances. *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, ¶ 15. If, however, "the general-law test is not satisfied, then the statute is 'an unconstitutional attempt to limit the legislative home-rule powers' of municipalities." *Id.*, quoting *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 7676 N.E.2d 963, at ¶ 10.

{¶ 24} The Supreme Court of Ohio has found that photo enforcement programs do not exceed an Ohio municipality's home rule authority provided the municipality does not alter statewide traffic regulations. *See Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at the syllabus. The Supreme Court reaffirmed the holding of *Mendenhall* in *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, explaining that "Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances, and that these administrative proceedings must be exhausted before offenders or the municipality can pursue judicial remedies." *Walker* at ¶ 3.

{¶ 25} There is no question that under the *Mendenhall* test, the local ordinances encompass the police power. "[T]he regulation of traffic is an exercise of police power that relates to public health and safety, as well as to the general welfare of the public." *Mendenhall* at ¶ 19, citing *Linndale v. State*, 85 Ohio St.3d 52, 54, 706 N.E.2d 1227 (1999).

{¶ 26} With respect to whether a conflict exists between the cities' local ordinances setting forth their photo enforcement programs and the contested provisions of H.B. 62, the state contends that the cities did not and cannot show that a conflict exists. We disagree. The state statutes in this case indirectly prohibit what the local ordinances permit. The Supreme Court of Ohio has recognized conflict by implication. *See Mendenhall* at ¶ 31-32. In *Mendhall*, the Supreme Court found no conflict by implication because the issue was whether the state "had exclusivity in the area of speed enforcement," which the court held it did not. *Id.* at ¶ 33. Here, however, the state is attempting to exclusively control (1) the funds local authorities receive from photo enforcement programs, (2) where citizens can challenge a photo enforcement citation, and (3) who pays the court costs with respect to challenges to a photo enforcement citation. We therefore find that a conflict exists between the contested provisions of H.B. 62 and the local ordinances.

{¶ 27} Thus, the only question remaining is whether the state statutes qualify as a general law under the four-part test in *Canton*. The first two criteria are easily met. The contested provisions of H.B. 62 (1) are part of a statewide and comprehensive legislative enactment and (2) apply to all parts of the state alike (if a local ordinance enacts a photo enforcement program).

{¶ 28} Therefore, with respect to the contested provisions of H.B. 62, we must determine only the last two *Canton* factors: (3) do the state statutes at issue set forth police, sanitary, or similar regulations or do they grant or limit the legislative power of a municipal corporation to set forth its own police, sanitary, or

similar regulations, and (4) do the state statutes prescribe a rule of conduct upon citizens generally.

### a. *Dayton v. State*

**{¶ 29}** The Ohio Supreme Court's opinion in *Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, is instructive here despite being a plurality opinion. Three justices found the traffic-camera laws at issue were not general laws (and therefore unconstitutional) because they violated the third prong of the *Canton* test. Two justices found the camera laws at issue were not general laws (and therefore unconstitutional) because they violated the fourth prong of the *Canton* test. We therefore find *Dayton* to be instructive to our analysis.

**{¶ 30}** The lead opinion in *Dayton* analyzed several Revised Code provisions that were passed by the General Assembly in 2014 Am.Sub.S.B. No. 342 ("S.B. 342"). These provisions regulated "local authorities' use of automated traffic-enforcement programs." *Id.* at ¶ 4. The three contested provisions of S.B. 342 were set forth in R.C. 4511.093(B)(1), 4511.0912, and 4511.095. R.C. 4511.093(B)(1) required the presence of a full-time law-enforcement officer at each traffic camera. R.C. 4511.0912 provided that local authorities shall not issue a ticket for a speeding violation unless "the vehicle involved in the violation is traveling at a speed that exceeds the posted speed limit by not less than" 6 m.p.h. in a school zone or park area or 10 m.p.h. in other locations. And R.C. 4511.095 required local authorities to conduct safety studies and a public information campaign, educating and notifying the public about the location of the cameras. The "sole issue" in *Dayton* was

"whether the contested provisions of S.B. 343 qualif[ied] as general laws" under the *Canton* test. *Dayton* at ¶ 15. In doing so, the lead opinion focused only on the third prong of the *Canton* test because it found it to be dispositive. *Id.* at ¶ 15.

{¶ 31} Regarding the third prong of the *Canton* test, the general-law test, the lead opinion in *Dayton* explained that it had to consider "whether the statute sets forth police regulations or whether it merely grants or limits municipalities' legislative power to set forth police regulations." *Dayton* at ¶ 16, citing *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 33. The Supreme Court explained:

> Under this court's precedent, so long as a statute serves an overriding state interest with respect to police, sanitary, or similar regulations, then the third prong of the *Canton* general-law test is satisfied, even if the statute limits the legislative authority of municipalities. However, when a statute expressly grants or limits the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, without serving an overriding statewide interest, then the statute, or a portion of it, violates the Home Rule Amendment.

*Id.* at ¶ 20.

{¶ 32} The lead opinion reviewed previous cases where the Supreme Court had analyzed the third prong of the *Canton* test:

> In *Canton*, the court considered whether R.C. 3781.184, which related to the zoning of property for manufactured homes, violated the Home Rule Amendment. R.C. 3781.184(C) provided that political subdivisions must allow manufactured homes to be placed in areas where single-family residences were permitted. R.C. 3781.184(D) created an exception to division (C) that allowed private-property owners to prohibit manufactured homes on their land by way of restrictive covenants in deeds. The court determined that "R.C. 3781.184(C), on its face, appears to serve an overriding state interest in providing more affordable housing options across the state." *Canton*

at ¶ 33. It then determined, however, that "the exception contained in R.C. 3781.184(D) defeats this purpose." *Id.* According to the court, R.C. 3781.184(C) would have "very little, if any, impact in areas of development having effective deed restrictions or active homeowner associations. Instead, the statute [would] effectively apply only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations." *Id.* at ¶ 30. Because the statute did not serve an overriding state interest, the *Canton* court determined that R.C. 3781.184(C) "purports only to grant or limit the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations." *Id.* at ¶ 33.

This court confronted the third prong of the *Canton* test in *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967. In *Ohioans for Concealed Carry*, the court considered whether a municipal ordinance that prohibited licensed gun owners from carrying a concealed gun within a city's parks was constitutional under the Home Rule Amendment. The municipal ordinance conflicted with a state statute that allowed a licensed gun owner to carry a gun anywhere in the state, subject to several exceptions that did not include municipal parks. In analyzing the third prong of the Canton general-law test, the court determined that the statute went beyond preventing cities from enacting conflicting legislation because the statute "provide[d] a program to foster proper, legal handgun ownership in this state." *Id.* at ¶ 50. The court determined that "[t]he statute therefore represents both an exercise of the state's police power and an attempt to limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations." *Id.*; *see also Mendenhall*, 117 Ohio St. 3d 33, 2008-Ohio-270, at ¶ 24, 881 N.E.2d 255 (determining that R.C. 4511.21 "has extensive scope and does more than grant or limit state powers").

This court confronted the third prong of the *Canton* test again in *Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644. The city of Cleveland sought a declaration that former R.C. 4921.25, 2012 Am.Sub.H.B. No. 487, was unconstitutional under the Home Rule Amendment. Former R.C. 4921.25 vested the Public Utilities Commission of Ohio ("PUCO") with the authority to regulate towing entities as for-hire motor carriers, but the second sentence of the statute provided that "[s]uch an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles." Cleveland challenged the second sentence of the

statute as unconstitutionally infringing on local authorities' abilities to regulate towing companies. This court determined that the statute, when read as a whole, did not merely limit the legislative power of municipalities to set forth police, sanitary, or similar regulations, *Cleveland* at ¶ 13; nevertheless, the court isolated the second sentence of the statute, analyzed it separately, and determined that it was unconstitutional, *id.* at ¶ 16-17. According to the court, "[u]nlike the first sentence of R.C. 4921.25, which subjects towing entities to PUCO regulation, the second sentence fails to set forth any police, sanitary, or similar regulations." *Id.* at ¶ 16.

*Dayton* at ¶ 17-19.

{¶ 33} After applying the reasoning of those three cases to the contested provisions of S.B. 342, the lead opinion of *Dayton* held that the three traffic-camera statutes failed the third prong of the *Canton* test and improperly infringed upon municipal power. *Id.* at ¶ 21-27. The lead opinion found that the three contested provisions of S.B. 342, R.C. 4511.093(B)(1) (required police presence at the location of a traffic camera), R.C. 4511.0912 (prohibited a municipality from issuing a fine for speeding based on a traffic camera unless the driver's speed exceeded the speed limit by six or ten miles per hour), and R.C. 4511.095 (required a municipality to perform a study and public-information campaign before using the cameras) did not serve an overriding statewide interest. *Id.*

{¶ 34} Two justices in *Dayton* agreed with the lead opinion that the three contested provisions of S.B. 342 were unconstitutional, but for a different reason. *See id.* at ¶ 40-41 (French, J., concurring in judgment only ("CJO opinion")). The CJO opinion found the three contested provisions to be unconstitutional under the

fourth prong of the *Canton* test. The CJO opinion reviewed previous cases where

the Supreme Court had analyzed the fourth prong:

> Under the fourth prong of the *Canton* test, a statute must "prescribe a rule of conduct upon citizens generally" to qualify as a general law. *Id.* at ¶ 21. The statute at issue in *Canton* — forbidding political subdivisions from prohibiting or restricting the location of permanently sited manufactured homes in any zone or district in which a single-family home was permitted — did not satisfy that requirement because it "applie[d] to municipal legislative bodies, not to citizens generally." *Id.* at ¶ 2, 36. In contrast, a statute that established speed limits and stated, "'No person shall operate a motor vehicle * * * at a speed greater or less than is reasonable or proper,'" prescribed a rule of conduct upon citizens and satisfied the fourth prong of the *Canton* test. *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 25, quoting R.C. 4511.21.
>
> In *Linndale v. State*, 85 Ohio St.3d 52, 1999 Ohio 434, 706 N.E.2d 1227 (1999), this court considered a home-rule challenge to former R.C. 4549.17, which prohibited local law-enforcement officers from issuing speeding and excess-weight citations on interstate freeways when (1) less than 880 yards of the freeway were within the locality's jurisdiction, (2) local officers had to travel outside their jurisdiction to enter onto the freeway, and (3) local officers entered the freeway with the primary purpose of issuing the citations. *Linndale* predates *Canton*, but the court nevertheless addressed factors that it would later incorporate into the *Canton* general-law test. *Linndale* at 55. The court held that R.C. 4549.17 was not a general law but was simply a limit on the legislative powers of municipalities to adopt and enforce police regulations. *Id.* As relevant here, the court stated that the statute did "not prescribe a rule of conduct upon citizens generally." *Id.*
>
> We reached a similar conclusion in *Youngstown v. Evans*, 121 Ohio St. 342, 7 Ohio Law Abs. 703, 168 N.E. 844 (1929). The statute at issue there limited municipalities' authority to set punishments for misdemeanor violations of a municipal ordinance. This court stated that the statute was "not a general law in the sense of prescribing a rule of conduct upon citizens generally. It is a limitation upon law making by municipal legislative bodies." *Id.* at 345.

{¶ 35} The CJO opinion found that unlike the speed-limit statute in

*Mendenhall*, the contested traffic-camera provisions at issue in *Dayton* did "not

dictate a rule of conduct applicable to the citizens of the state." *Id.* at ¶ 44. The CJO

opinion explained:

> Indeed, nothing in S.B. 342 directs citizens' conduct with respect to the operation of a motor vehicle. Driving in excess of the speed limit and running a red light are violations of the law, whether or not a traffic camera exists to record the violation and whether or not a law-enforcement officer has authority to issue a citation. The contested provisions are phrased in terms of what a local authority shall or shall not do. They apply not to citizens but to municipalities. Like the statute in *Linndale*, the contested provisions of S.B. 342 merely limit municipal authority to enforce other substantive laws.

*Id.*

### b. Analysis

{¶ 36} We now turn to the three contested provisions under H.B. 62 t0 apply

the third and fourth prong of the *Canton* test to determine if the contested

provisions are general laws.

### i. The Second Contested Provision — Reduction of Funds

{¶ 37} The second contested provision, reduction of the local government

funds from the state, is set forth in R.C. 5747.502. Under H.B. 62, this provision

states that any local authority "that operated, directly or indirectly, a traffic law

photo-monitoring device during the preceding fiscal year" must annually "file a

report with the tax commissioner that includes a detailed statement of the civil fines

the local authority * * * collected from drivers for any violation of any local ordinance

or resolution during that period that are based upon evidence recorded by a traffic

law photo-monitoring device." R.C. 5747.502(B). A local authority's payments from

the state local government fund are then reduced by an amount equal to one-twelfth

of the gross amount of all fines indicated on the report. R.C. 5747.502(C)(1). If the fines exceed the amount of state funds the local authority would otherwise receive, its future funds are reduced as well. *Id.* If the local authority does not file a report as required, all payments of local government funds to the locality will cease until a report is filed. R.C. 5747.502(D). An amount equal to the payments withheld (except for fines incurred in school zones) are then deposited into an Ohio highway and transportation safety fund and used in the transportation district in which the local authority is located. R.C. 5747.502(F).

{¶ 38} The cities contend that there is no overriding state interest in R.C. 5747.502 and that it "serves merely to penalize municipalities that operate photo enforcement programs without any overriding state interest, as the [s]tate simply reallocates the local government funds that it takes away from offending cities." R.C. 5747.502(F). The cities further maintain that R.C. 5747.502 does not prescribe a rule of conduct applicable to the citizens of the state.

{¶ 39} The state maintains that the Ohio Constitution provides that state spending lies within the General Assembly's exclusive power. It argues that nowhere in the Constitution is a mandate that the state even have a local government fund, nor does the Constitution impose a duty on the state to appropriate funds to municipalities. The state further contends that although the Home Rule Amendment "protects municipalities' 'authority to exercise' the 'powers of local self-government,' and to enforce 'local police * * * regulations[,] * * * it does not confer a right to receive state money.' " According to the state, the Ohio Constitution

expressly authorizes the General Assembly to pass laws "requir[ing] reports from municipalities as to their financial condition and transactions," which the General Assembly has done on "other occasions." Therefore, the state argues that this power "implies a power to withhold funding based on what is reported when the General Assembly exercises its authority to pass laws appropriating funds."

{¶ 40} After review, we agree with the cities. Indeed, we see no overriding state interest in R.C. 5747.502, and the state has failed to set forth viable one. Just because the state has the power to control state spending does not mean that it has the power to penalize local authorities who are operating traffic-camera programs, something the Supreme Court stated local authorities had the authority to do under the Home Rule Amendment. *See Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255; *Walker*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474.

{¶ 41} We further find that R.C. 5747.502 fails the fourth prong of the *Canton* test because it fails to prescribe a rule of conduct applicable to the citizens of this state. Rather, the provisions are directed solely at the local authorities.

{¶ 42} Therefore, R.C. 5747.502(C), (D), and (F) fail to satisfy the third and fourth prongs of the *Canton* test.[2] Accordingly, they are not general laws and are unconstitutional attempts to limit the legislative home-rule powers of municipalities.

### ii. The Third Contested Provision — Exclusive Jurisdiction

---

[2] We note, however, that R.C. 5747.502(B) is permissible because the state is merely requesting reports from the municipalities, which it is authorized to do under the Constitution.

{¶ 43} The third contested provision, conferring "exclusive jurisdiction" over such traffic-camera actions to municipal and county courts and eliminating a local authority's ability to appoint administrative hearing officers to adjudicate photo enforcement tickets, is set forth in R.C. 1901.20(A)(1) and 1907.02(C).

{¶ 44} R.C. 1901.20(A)(1) as enacted by H.B. 62 sets forth criminal and traffic jurisdiction in relevant part, stating:

> The municipal court has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance. The municipal court does not have jurisdiction over a violation that is required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code. However, the municipal court has jurisdiction over the violation of a vehicle parking or standing resolution or regulation if a local authority, as defined in division (D) of section 4521.01 of the Revised Code, has specified that it is not to be considered a criminal offense, if the violation is committed within the limits of the court's territory, and if the violation is not required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code.

{¶ 45} R.C. 1907.02(C) as enacted by H.B. 62 sets forth jurisdiction for criminal cases and parking violations. It provides, "A county court has exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance, if the violation is committed within the limits of the court's territory."

{¶ 46} The cities make the same arguments with respect to the third contested provisions, i.e., that R.C. 1901.20(A)(1) and 1907.02(C) do not serve any

overriding state interest and do not prescribe rules of conduct for the citizens of Ohio.

{¶ 47} The state contends that the General Assembly has the exclusive power to define the jurisdiction of the lower courts and to provide for their maintenance. It maintains that the Home Rule Amendment does not limit the plenary powers of the General Assembly over inferior courts. The state cites to, inter alia, *Cupps v. Toledo*, 170 Ohio St. 144, 163 N.E.2d 384 (1959), in support of its argument. In *Cupps*, Toledo sought to deprive a lower court of its jurisdiction through a charter provision that made decisions of the city's civil service commission final. State law, however, made such decisions appealable to the common pleas courts. The Ohio Supreme Court held that "the authority granted to municipalities by [the Home Rule Amendment] * * * does not include the power to regulate the jurisdiction of courts established by the Constitution or by the General Assembly thereunder." *Id.* at 149-150.

{¶ 48} *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, *Walker*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, and *State ex rel. Magsig v. Toledo*, 160 Ohio St.3d 899, 2020-Ohio-3416, 156 N.E.3d 899, are instructive. Mendenhall hit and killed a child in a hit-and-run accident in a school crosswalk. Akron subsequently passed an ordinance implementing an "automated mobile speed enforcement system." *Mendenhall* at ¶ 4. The ordinance created a system that was purely civil in nature and did not modify any state speed limits. Violators received notices of civil liability and could pay the civil fines or pursue an

administrative appeal. Mendenhall received a notice of liability for speeding, which was dismissed on administrative appeal. Mendenhall filed a class-action suit against the municipality for a declaratory judgment, an injunction, and a monetary award. Mendenhall asserted that the Akron ordinance conflicted with Ohio's general laws regulating traffic, thereby exceeding Akron's home-rule authority and violating due process.

{¶ 49} The Ohio Supreme Court examined the following question in *Mendenhall*: "Whether a municipality has the power under home rule to enact civil penalties for the offense of violating a traffic signal light or for the offense of speeding, both of which are criminal offenses under the Ohio Revised Code." *Id.* at ¶ 2. The Supreme Court concluded: "[Akron's] ordinance provides for a complementary system of civil enforcement that, rather than decriminalizing behavior, allows for the administrative citation of vehicle owners under specific circumstances. Akron has acted within its home rule authority granted by the Constitution of Ohio." *Id.* at ¶ 42.

{¶ 50} In *Walker*, the Ohio Supreme Court cited to *Cupps* and "acknowledge[d] that home-rule authority does not include the power to regulate the jurisdiction of courts." *Id.* at ¶ 20, citing *Cupps* at paragraph one of the syllabus. But the Supreme Court reaffirmed its holding in *Mendenhall* "that municipalities have home-rule authority under Article XVIII of the Ohio Constitution to impose civil liability on traffic violators through an administrative enforcement system." *Id.* at ¶ 3. It further held that the "Ohio Constitution, Article IV, Section 1, which

authorizes the legislature to create municipal courts, and R.C. 1901.20, which sets the jurisdiction of municipal courts, do not endow municipal courts with exclusive authority over civil administrative enforcement of traffic-law violations" and that "Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances, and that these administrative proceedings must be exhausted before offenders or the municipality can pursue judicial remedies." *Id.*

{¶ 51} Recently, however, in *State ex rel Magsig v. Toledo*, 160 Ohio St.3d 899, 2020-Ohio-3416, 156 N.E.3d 899, the Ohio Supreme Court addressed its holding in *Walker* as well as the application of *Walker* to the exclusive-jurisdiction provision in H.B. 62. The Supreme Court explained:

> The version of R.C. 1901.20(A)(1) that was in effect at the time of our *Walker* decision did not give municipal courts exclusive jurisdiction over cases involving traffic-camera citations. *Id.* at ¶ 1-3. The previous version of R.C. 1901.20(A)(1) stated: "The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory[.]" Am.Sub.S.B. No. 98, 147 Ohio Laws, Part IV, 7357. We held that "any" did not mean the same thing as "exclusive," and that the statute could therefore not be read as conferring exclusive jurisdiction over civil traffic-law violations on municipal courts. *Id.* at ¶ 25. But as amended by H.B. 62 in 2019, R.C. 1901.20(A)(1) now states that municipal courts have "*exclusive* jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." (Emphasis added). The current version of R.C. 1901.20(A)(1) clearly and unambiguously reserves for municipal courts exclusive authority to adjudicate every civil traffic-law violation. And that statutory grant of jurisdiction "cannot be impaired or restricted by any municipal charter or ordinance provision." *Cupps v. Toledo*, 170 Ohio St. 144, 151, 163 N.E.2d 384 (1959).

*Id.* at ¶ 11.

**{¶ 52}** The Supreme Court explicitly noted in *Magsig* that Toledo did not challenge the constitutionality of the exclusive-jurisdiction clause of R.C. 1901.20(A) as enacted by H.B. 62. *Id.* at ¶ 16. Nonetheless, the Supreme Court stated that although Toledo did not do so, "the authority of the General Assembly to set the jurisdiction of the municipal courts is undisputed." *Id.*

**{¶ 53}** After review, we agree with the state that the exclusive-jurisdiction provision in H.B. 62 does not violate the Home Rule Amendment or any other section of the Ohio Constitution. The cities' authority under the Home Rule Amendment to regulate local police, sanitary, and other similar regulations does not include the power to regulate the jurisdiction of courts. The power to regulate the jurisdiction of courts is established by the Constitution or by the General Assembly, and, thus, the Home Rule Amendment does not apply to R.C. 1901.20(A)(1) and 1907.02(C). *But see Akron v. Ohio*, Summit C.P. No. CV-2015-07-3666 (found that these provisions failed the third prong of the *Canton* test because they limited the city's police power without serving an overriding state interest).

### iii. The Fourth Contested Provision — Advance Court Deposit

**{¶ 54}** The fourth contested provision, requiring local authorities to provide advance and nonrecoverable court deposits to cover "all applicable court costs and fees" for civil actions related to the photo enforcement programs, is set forth in R.C. 4511.099(A). This deposit is not required in a school zone and is nonrefundable. R.C. 4511.099(A) and (B). R.C. 4511.099(A) states:

[W]hen a certified copy of a ticket issued by a local authority based on evidence recorded by a traffic law photo-monitoring device is filed with the municipal court or county court with jurisdiction over the civil action, the court shall require the local authority to provide an advance deposit for the filing of the civil action. The advance deposit shall consist of all applicable court costs and fees for the civil action. The court shall retain the advance deposit regardless of which party prevails in the civil action and shall not charge to the registered owner or designated party any court costs and fees for the civil action.

{¶ 55} The cities again argue that this provision does not have an overriding state interest and does not prescribe a rule upon the citizens of the state.

{¶ 56} The state contends that it has an overriding state interest in making sure that municipal courts are properly funded. The state further maintains that because "R.C. 1901.026(A) has long made cities responsible for contributing to the 'operating costs' of municipal courts whose jurisdictions include more than one city," the advance-deposit requirement of R.C. 4511.099(A) "prevents other cities from having to share the costs associated with one city's traffic-camera program."

{¶ 57} After review, we agree with the cities that R.C. 4511.099(A) is not a general law and is therefore, unconstitutional. Even if we assume that the state's interest satisfies the third prong of the *Canton* test, R.C. 4511.099(A) still only prescribes rules for the local municipalities and not citizens of the state. Therefore, R.C. 4511.099(A) is not a general law and is an unconstitutional attempt to limit the legislative home-rule powers of municipalities.

{¶ 58} After review, we sustain the cities' second assignments of error in part (because the cities are likely to succeed on the merits of their claims that the second and fourth contested provisions of H.B. 62 violate the Home Rule Amendment) and

overrule them in part (because the cities are not likely to succeed on their claim that the third contested provision violates the Home Rule Amendment).

### 2. Other Constitutional Challenges

**{¶ 59}** Because we found that the second and fourth contested provisions (reduction of funds and advance court deposit) violate the Home Rule Amendment, we will address only the likelihood of success of the cities' other constitutional arguments with respect to the third contested provision, i.e., the exclusive-jurisdiction provision. We will also address only the other constitutional arguments that the cities raise on appeal.

### a. Separation-of-Powers

**{¶ 60}** East Cleveland contends in its third assignment of error that the exclusive-jurisdiction provision is unconstitutional because it violates the separation-of-powers doctrine. It claims that H.B. 62 is an unconstitutional "attempt to circumvent the [Ohio Supreme] Court's holding" in *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, and *Walker*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, that "Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances[.]"

**{¶ 61}** As we already explained, however, the Ohio Supreme Court recently stated in *Magsig* that the statute at issue in *Walker* did not grant exclusive jurisdiction over civil traffic-law violations to municipal courts. *Magsig*, 160 Ohio St.3d 899, 2020-Ohio-3416, 156 N.E.3d 899, at ¶ 11. Now, however, the General

Assembly has amended the statute to do so. Therefore, because these cases addressed a different version of the statute, they do not support East Cleveland's argument that the exclusive-jurisdiction provision as enacted in H.B. 62 violates the separation-of-powers doctrine. East Cleveland's third assignment of error is overruled because it is not likely to succeed on the merits of this claim.

**b. One-Subject Rule**

{¶ 62} East Cleveland further argues in its fourth assignment of error that the exclusive-jurisdiction provision violates the one-subject rule of the Ohio Constitution. East Cleveland asserts H.B. is an appropriations bill with a stated purpose to "increase the rate of and modify the distribution of revenue from motor fuel excise taxes, to make appropriations for programs related to transportation and public safety for the biennium beginning July 1, 2019, and ending June 30, 2021, and to provide authorization and conditions for the operation of those programs." East Cleveland maintains that the contested provisions (although the exclusive-jurisdiction provision is the only one at issue now) of H.B. 62 "attempt to regulate photo enforcement programs funded by municipalities." Specific to the exclusive-jurisdiction provision, East Cleveland argues that this provision "does not belong in a budget bill as the adjudication process for photo-enforcement cases does not impact the state's budget."

{¶ 63} The one-subject rule is contained in Section 15(D), Article II of the Ohio Constitution, which provides, "No bill shall contain more than one subject, which shall be clearly expressed in its title." This provision exists to prevent the

legislature from engaging in "logrolling," i.e., ""the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately."" *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 47, quoting *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142-143, 464 N.E.2d 153 (1984).

{¶ 64} A reviewing court's role in the enforcement of the one-subject provision is limited. As explained by the Ohio Supreme Court:

> To avoid interfering with the legislative process, we must afford the General Assembly "great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject."

*State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27, quoting *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153. Every presumption in favor of the enactment's validity should be indulged. *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985).

{¶ 65} Only "[a] manifestly gross and fraudulent violation of the one-subjection provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *Bloomer*, at ¶ 49, citing *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the

syllabus. As long as common purpose or relationship exists between the topics, the mere fact that a bill embraces more than one topic will not be fatal. *Id.* It is the disunity of subject matter, rather than the aggregation of topics, that cause a bill to violate the one-subject rule. *Id.* The one-subject rule is not directed at plurality but at disunity in subject matter. *Ohio Civ. Serv. Emps. Assn.* at ¶ 28.

{¶ 66} In this case, we must determine whether there is an alleged violation of the one-subject rule within the context of an appropriations bill. "[T]he analysis of the one-subject rule with respect to appropriation bills can be complicated because appropriations bills 'encompass many items, all bound by the thread of appropriations.'" *Rumpke Sanitary Landfill, Inc. v. Ohio*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, ¶ 16 (1st Dist.2009), quoting *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 16, 711 N.E.2d 203 (1999).

{¶ 67} After review, we find that the exclusive-jurisdiction provision directly relates to the authorization and conditions of the operation of photo-enforcement programs. Moreover, East Cleveland's photo-enforcement program is explicitly related to transportation safety, which is also directly related to the stated purpose of the appropriations bill set forth in H.B. 62. Therefore, East Cleveland was not likely to succeed on the merits of this claim, and its fourth assignment of error is overruled.

{¶ 68} The cities do not raise any other constitutional arguments on appeal.

**B. Irreparable Harm**

{¶ 69} The second factor a trial court must consider is whether the movant has shown irreparable harm. *KLN Logistics Corp.*, 174 Ohio App.3d 712, 2008-Ohio-212, 884 N.E.2d 631, at ¶ 12, citing *Vanguard Transp. Sys.*, 109 Ohio App.3d at 790, 673 N.E.2d 182. In their first assignments of error, the cities argue that the trial court erred when it determined that they would not suffer irreparable harm if the court did not enjoin the enforcement of the contested provisions.

{¶ 70} The trial court found that the cities' evidence was not sufficient because "[e]conomic harm is not sufficient to satisfy the element of irreparable harm." The trial court further found that the cities did not establish that the denial of the injunction would adversely affect driver safety.

{¶ 71} First, as we stated earlier, the trial court failed to analyze whether the cities were likely to succeed on the merits of their Home Rule Amendment claims (except with respect to the first contested provision, i.e., requiring an officer to be present). Had it done so, it would have presumably recognized that the cities' preliminary injunction could still be justified even if their evidence of irreparable harm was weak. *See Cleveland Elec. Illum. Co.*, 115 Ohio App.3d at 14, 684 N.E.2d 343. Because we have already determined that the cities were likely to succeed on the merits of their claims that the reduction-of-funds provision and the advance-deposit provision violated the Home Rule Amendment, we find that their evidence of irreparable harm (even if we assume, for the sake argument, is weak) was sufficient to justify a preliminary injunction.

{¶ 72} The cities presented evidence through testimony or affidavit that since having photo enforcement programs, there have been significantly less red-light and speeding violations per camera. They also presented evidence that their cameras have generated significant funds for the city, which helps fund city services including the police and fire departments. Further, they presented evidence establishing that complying with H.B. 62 would make it difficult for them to continue to operate their photo enforcement programs.

{¶ 73} After review, we conclude that the cities established that they would suffer irreparable harm if the second (reduction of funds) and fourth (advance-court deposit) contested provisions of H.B. 62 were not enjoined. Again, if they established that they were likely to succeed on the merits of their claims, their showing of irreparable harm did not have to be as strong. Accordingly, we sustain the cities' first assignments of error.

## C. Harm to Third Parties and Public Interest

{¶ 74} The third and fourth factors that a trial court must consider when deciding whether to grant a preliminary injunction motion are whether third parties will be harmed if the injunction is granted and whether the public interest would be served by issuing a preliminary injunction. *KLN Logistics Corp.*, 174 Ohio App.3d 712, 2008-Ohio-212, 884 N.E.2d 631, at ¶ 12, citing *Vanguard Transp. Sys.*, 109 Ohio App.3d at 790, 673 N.E.2d 182. In its third assignment of error, Newburgh Heights maintains that the trial court erred because there was "no possibility of

substantial harm to the state of Ohio or other third parties" and that "granting of the preliminary injunction was clearly in the public interest."

{¶ 75} The state counters that anytime "its duly enacted laws do not go into effect," it is harmed. It further contends that only the General Assembly "has the authority to determine what the public interest is."

{¶ 76} After review, we agree with Newburgh Heights. First, the state cannot be harmed when an unconstitutional law does not go into effect. We previously found that the second (reduction of funds) and fourth (advance court deposit) provisions of H.B. 62 are unconstitutional because they violate the Home Rule Amendment. Therefore, the state cannot be harmed by the preliminary injunction enjoining enforcement of those provisions. We further agree with Newburgh Heights that there is no evidence that any other third party will be harmed by the preliminary injunction.

{¶ 77} Second, Newburgh Heights and East Cleveland presented evidence showing that if they had to follow the mandates of H.B. 62, the cost of complying would curtail their ability to maintain their photo-enforcement programs, which would, in turn, make their roadways less safe. The state did not counter this evidence. Accordingly, we agree that granting the preliminary injunction benefited the public's interest.

{¶ 78} Newburgh Heights' third assignment of error is sustained.

{¶ 79} Judgment affirmed in part, reversed in part, and remanded. The trial court's judgment denying the cities' motion for preliminary injunction with respect

to the third contested provision giving municipal courts exclusive jurisdiction is affirmed. The trial court's judgment denying the cities' motion for preliminary injunction regarding the second contested provision reducing the cities' funds and fourth contested provision requiring the cities to pay advance court deposits is reversed. This case is remanded for further proceedings.

It is ordered that appellee and appellants share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., and
KATHLEEN ANN KEOUGH, J., CONCUR